UNITED STATES of America, Plaintiff–Appellee,

v.

Michael LENNICK, Defendant–Appellant.

No. 90–1063.

United States Court of Appeals, Seventh Circuit.

Argued Aug. 9, 1990.

Decided Oct. 26, 1990.

Andrew B. Baker, Jr., Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Thomas F. Grabb, South Bend, Ind., for defendant-appellant.

Before COFFEY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

In this direct criminal appeal, appellant Michael Lennick argues that the district court erred in admitting at trial a statement· Lennick made to a federal agent. Lennick was charged and convicted of making a false statement to a federal agent in violation of 18 U.S.C. § 1001 after he told the agent that he was the owner of a certain gun. Lennick contends that the statement was admitted in violation of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He also claims that the trial judge erred in calculating his sentence under the Sentencing Guidelines.

I.

Lennick's conviction grew out of a larger investigation into drug trafficking in South Bend, Indiana. Lennick was a business partner of Edward Landaw, a convicted felon whom the South Bend police suspected of drug trafficking. During the summer of 1988, Landaw and his girlfriend, Linnette Moss, visited Moss' grandmother. Moss' grandmother lived with a man named Lonnie Freshour. Freshour had an assault rifle that he wished to sell, and Landaw said he knew someone who would buy it. Landaw left the house with the gun, and several days later Freshour called

Moss to inquire whether the gun had been sold. Moss instructed Freshour to come over and pick up some money for the gun. Freshour arrived, was paid $400 by Moss, and then left.

The South Bend police arrested Landaw and Moss in October 1988 after concluding extensive surveillance of Landaw's activities. The rifle was found during the search of one of the buildings Landaw controlled. The gun was held by the police pending Landaw's trial. Landaw was charged with possession of a firearm by a convicted felon, and Moss was charged with conspiracy to distribute cocaine. After Landaw's arrest, Lennick went to Freshour and claimed that Landaw had actually sold the gun to him. Lennick told Freshour that he now wanted a receipt for the $400 he paid for the gun. Freshour complied and made out a receipt showing that Lennick purchased the gun during the summer of 1988. In a second attempt to provide Landaw with a defense to the firearm charges, Lennick employed an attorney who wrote to the South Bend Police Department and requested that the rifle be returned to Lennick because it belonged to him, not Landaw.

In July 1989, Moss' conspiracy trial began. Lennick attended the trial as a spectator. During a recess on July 18, Lennick was in the hallway outside the courtroom when he was approached by Special Agent Allbritten and a local police officer. According to Lennick, Allbritten asked him to identify himself. Lennick complied. Then, according to Lennick, the following occurred:

> Special Agent Allbritten ... asked Mr. Lennick if he was the owner of the Marlin rifle which was taken in the search [of Landaw's building]. Mr. Lennick responded that he had an attorney who wanted to be present at any questioning concerning the rifle and Special Agent Allbritten stated that an attorney was not necessary since all he wanted to know was whether Mr. Lennick was claiming ownership of the gun in question. Mr. Lennick then stated that he was the owner.

The agent and the police officer left after Lennick provided this information.

The next day, the government charged Lennick with violating 18 U.S.C. § 1001. Lennick sought to have the statement to Allbritten suppressed at trial. He argued that the agent should have given *Miranda* warnings before questioning him and that the agent should have stopped questioning him when he invoked his right to counsel. This was especially true, Lennick contended, because the government already knew that Lennick claimed to be the gun's owner: Lennick had publicly sought the return of the gun from the South Bend police, and Landaw's defense to the firearm charges was that Lennick was the real owner of the rifle. The district court refused Lennick's request for a hearing on the motion to suppress and allowed the statement to be admitted at trial. The court denied the motion because Lennick alleged no facts that would support a finding that he was "in custody" (and therefore entitled to *Miranda* warnings) when Allbritten asked him the question about ownership of the gun.

## II.

On appeal, Lennick renews his challenge to the admissibility of the statement he made to agent Allbritten. He also argues that the district court improperly increased his sentence under section 2F1.1(b)(2)(A) of the guidelines on the grounds that Lennick's false statement to the federal agent involved "more than minimal planning."

## A.

As an initial matter, there is a question as to the proper standard of appellate review of whether a person was "in custody" for purposes of *Miranda.* Lennick claims that the proper standard is a de novo review of the district court's holding. For support, he points to *United States v. Hocking,* 860 F.2d 769, 772 (7th Cir.1988), where the court held that the "ultimate issue of whether there was a custodial interrogation is a mixed question of law and fact." As such, *Hocking* held that the district court's "determination is indepen-

dently reviewable by an appellate court." *Id.* There was no direct authority for this holding, however, and the court in *Hocking* noted conflicting authority supporting the more deferential "clearly erroneous" standard. *See id.*

Due to the lack of definitive Supreme Court precedent on the issue, *see United States v. Boden,* 854 F.2d 983, 990 (7th Cir.1988), the announced standards range from *Hocking*'s de novo review, 860 F.2d at 772, to an intermediate standard of granting the district court's determination "some deference," *United States v. Ceballos,* 812 F.2d 42, 47 & n. 1 (2d Cir.1987), to the clearly erroneous standard that grants district court determinations the greatest deference. *United States v. Teslim,* 869 F.2d 316, 321 (7th Cir.1989); *cf. United States v. Malin,* 908 F.2d 163, 169–70 (7th Cir.1990) (noting a split in authority on the question whether probable cause determinations are entitled to de novo or clearly erroneous review). The government does not address the question and fails to suggest an appropriate appellate standard for this case. We need not identify a specific standard in this case, however, because the district court's determination can be upheld even under the nondeferential de novo review.

**B.**

Turning to the merits of Lennick's claim, in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court "set forth rules of police procedure applicable to 'custodial interrogation.'" *Oregon v. Mathiason,* 429 U.S. 492, 494, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). These procedures required that defendants be given "a full and effective warning of [their] rights at the onset of the interrogation process." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612.[1] Of course, this requirement is not triggered unless a custodial relationship is established between the accused and the government. *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714.

"[C]ustodial interrogation ... mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612.

In order to establish a custodial relationship, a defendant must either show that he or she was formally arrested, or that he or she was subjected to restraints of freedom such that the conditions of a formal arrest were closely approximated or actually attained. *Mathiason,* 429 U.S. at 495, 97 S.Ct. at 714; *Hocking,* 860 F.2d at 772. In the latter case, the test is not whether the defendant was under a subjective belief that his or her movements were restricted, but whether a reasonable person in the defendant's position would believe that he or she was free to leave. *Boden,* 854 F.2d at 991. Thus, "[t]here is no 'seizure' subject to the Fourth Amendment unless a reasonable person in [defendant's] position would have believed that he was not free to ignore [the police] and continue on his way; the test is objective." *Id.*

A totality of the circumstances test is used to determine whether a reasonable person would have believed he or she was free to leave. Under this analysis, we look to such factors as the length of the interrogation, the purpose of the questioning, and the location of the interrogation. *Hocking,* 860 F.2d at 773; *Teslim,* 869 F.2d at 321. Since Lennick does not claim that he was formally arrested in the courthouse hallway, he must demonstrate that a reasonable person in his position would have believed that he or she was not free to ignore agent Allbritten and walk away. *Hocking,* 860 F.2d at 772.

Lennick fails to meet his burden on the facts he alleged in his motion to suppress. Lennick concedes in his brief that the questioning lasted only a few seconds and that there was little or no overt pressure on Lennick to make the statement.

1. These warnings are by now quite familiar: "Prior to any questioning, the person must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612.

Lennick argues, however, that the fact that he was outnumbered by the two officers and that the encounter took place in the nonneutral setting of the government courthouse rendered the encounter custodial. He also claims that the government's purpose in questioning him was simply to elicit an incriminating statement that could form the basis for a formal charge under 18 U.S.C. § 1001.

■ Even if Lennick is correct in his assessment of the government's motives in questioning him in the hallway that day, the purpose of the questioning is but one factor to consider in the totality of the circumstances analysis. As the government contends, Lennick was voluntarily at the trial of Linnette Moss in the federal courthouse and was approached in a public hallway during a recess in the trial. Under the objective standard, a reasonable person in Lennick's position would not have felt that he or she was restrained or otherwise required to stay and answer questions. This is true regardless of the motives the agent might have had in eliciting the statement from Lennick. The agents did not draw their weapons, did not tell Lennick he could not leave or block his exit, did not take him to an interrogation room or otherwise remove him from the public hallway. They simply approached him in a public building, asked him to identify himself, and asked him if he owned a certain gun. A reasonable person in Lennick's position would not have believed himself arrested, restrained or deprived of freedom to a degree closely approximating arrest. In sum, we affirm the district court's holding that Lennick was never placed in custody, and therefore he was never entitled to *Miranda* warnings.

### C.

■ Lennick next claims that when he invoked his right to counsel agent Allbritten should have stopped his questioning. Since the agent continued, Lennick claims that the statement he made to the agent after invoking counsel should have been suppressed. *Miranda* established that if a person in custody "states that he wants an

attorney, the interrogation must cease until an attorney is present." 384 U.S. at 474, 86 S.Ct. at 1628. It is clear, however, that the right to consult counsel does not arise absent a custodial relationship. *Id.* ("Without the right to cut off questioning, the setting of *in-custody interrogation* operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual [in custody] states that he wants an attorney, the interrogation must cease....."); *Espinoza v. Fairman*, 813 F.2d 117, 125 (7th Cir.), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 745 (1987) (the fifth amendment right to counsel vests when a person is taken into custody and continues for as long as he or she is in custody). As discussed above, Lennick was never in custody. Therefore, his statement that he "had an attorney who wanted to be present at any questioning concerning the rifle" did not require agent Allbritten to stop his inquiry. Again, we affirm the district court's conclusion that Lennick was not in custody, and that he therefore was not deprived of his fifth amendment right to counsel.

### D.

■ Turning to the sentencing issue, Lennick claims that the district court erred in increasing his sentence under section 2F1.1(b)(2)(A) of the Sentencing Guidelines. Section 2F1.1(b)(2)(A) provides for a two level increase in a defendant's base offense level if the offense involved "more than minimal planning." This phrase is defined in an earlier section of the guidelines:

"More than minimal planning" means more planning than is typical for commission of the offense in a simple form. "More than minimal planning" also exists if significant affirmative steps were taken to conceal the offense.

"More than minimal planning" is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses.

U.S.S.G. § 1B1.1 Application Note 1(f). The guidelines give several examples where adjustments would be appropriate; the example involving embezzlement provides as follows:

> In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never delivered would constitute more than minimal planning, as would several instances of taking money, each accompanied by false entries.

*Id.*

In our case, the district court judge held that Lennick's behavior involved more than "simple" perjury. The court noted that Lennick first procured a false receipt from Freshour and then employed an attorney in an attempt to create the impression that he was the owner of Landaw's gun. To the district court, this demonstrated that Lennick planned the lie and procured false proof to support the lie; Lennick, the court held, "engaged in planning far in excess of that typical for commission of the offense in a simple form."

We recently addressed the "more than minimal planning" enhancement in *United States v. White*, 903 F.2d 457 (7th Cir. 1990). After outlining the applicable guideline language, the court identified the appropriate standard of review:

> In applying the concept of "more than minimal planning," we note that it is for the district court to make the factual determination. We will treat the district court's determination with "due deference" and will reverse only if left "with a definite and firm conviction that a mistake has been committed." [*United States v. Herrera*, 878 F.2d 997, 1000 (7th Cir.1989)].

*White*, 903 F.2d at 465. Thus, Lennick must demonstrate that the district court judge was clearly erroneous in determining that Lennick's activities warranted a two level increase under section 2F1.1(b)(2)(A).

Lennick contends that he did "no more than anticipate that his claim of ownership to the firearm would be put into question and that he would need a paper trial [sic] to help support his claim." Therefore, Lennick concludes, his perjury was "simple" within the meaning of section 1B1.1, not complex or sophisticated. Lennick's argument, however, is foreclosed by the guidelines. It could equally be said that an embezzler who created false book entries, purchase orders and invoices was simply anticipating a claim of ownership to the money he stole. This embezzler would nonetheless be subject to a two-level increase under the guidelines.

It is true that the courts have generally applied the "more than minimal planning" enhancement provision to factual scenarios involving clear examples of repeated or complex criminal activity. *See, e.g., United States v. Werlinger*, 894 F.2d 1015, 1017 (8th Cir.1990) (embezzlement involving numerous false book entries over a period of several years); *United States v. Burns*, 893 F.2d 1343, 1346 (D.C.Cir.), *cert. granted*, —— U.S. ——, 110 S.Ct. 3270, 111 L.Ed.2d 780 (1990) (elaborate concealment scheme involving a tax evasion/embezzlement scheme); *United States v. Hearrin*, 892 F.2d 756, 759 (8th Cir.1990) (extensive mail fraud scheme wherein defendants' fictitious corporation was wrongfully reimbursed on seventy unauthorized claims); *United States v. Scroggins*, 880 F.2d 1204, 1205 (11th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990) (nineteen thefts over a two month period). Courts have not been reluctant, however, in upholding the application of this section to activity that involves considerably less planning than the previously cited cases. *See, e.g., United States v. Cianscewski*, 894 F.2d 74, 82–83 (8th Cir.1990) (three sales of stolen checks to undercover agents); *United States v. Foster*, 898 F.2d 25, 27 (4th Cir.1990) (a single attempted assault involving a car bomb); *United States v. Fox*, 889 F.2d 357, 361–62 (1st Cir.1989) (two fraudulent bank loans).

The guidelines provision in question authorizes an enhancement if it can be said that the offense exceeds "that typical for commission of the offense in a simple

form." Simple perjury would not involve the establishment of a "paper trail" like the one Lennick created. Therefore, the district court was not clearly erroneous in holding that Lennick's activity rose to the level of "more than minimal planning" under section 2F1.1(b)(2)(A).

### III.

Lennick's *Miranda* rights were not violated because he was not "in custody" when he made the incriminating statement. In addition, his sentence was properly enhanced because his activity rose to more than perjury "in the simple form." Lennick's conviction and sentence are therefore AFFIRMED.