956 F.2d 273
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Billy F. DYESS, Defendant/Appellant.
 No. 91-1858.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 18, 1992.*
Decided Feb. 27, 1992.
 
 Before BAUER, Chief Judge, and COFFEY, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted Billy F. Dyess of two counts of unlawful transportation in interstate commerce of securities taken by fraud. 18 U.S.C. § 2314. The district court sentenced Dyess under the Sentencing Guidelines to a total of 37 months' imprisonment followed by three years' supervised release. Dyess' direct appeal challenges only his sentence. We affirm.
 
 
 2
 Dyess first argues that the district court erred in increasing his sentence under Guidelines § 2F1.1(b)(2)(a). Section 2F1.1(b)(2)(a) provides for a two-level increase in a defendant's base offense level if the crime involved "more than minimal planning." According to the Guidelines, more than minimal planning occurs when the defendant does "more planning than is typical for commission of the offense in a simple form." Guidelines § 1B1.1, Application Note 1(f). Application Note 1(f) further explains that "more than minimal planning" exists in "any case involving repeated acts over a period of time unless it is clear that each instance was purely opportune." Id. Finally, Application Note 1(f) recognizes that "more than minimal planning" will "apply frequently in property offenses." Id.
 
 
 3
 The district court found that Dyess' fraud "involved multiple dealings with multiple banks, multiple misrepresentatives, and multiple checks over a period of weeks." Dyess disputes this finding, contending that he committed fraud "in its simplest form." Dyess maintains that he only "wrote and deposited three checks on one date and obtained two cashier's checks on a subsequent deposit two days later." Further, Dyess argues that Guidelines § 2F1.1(b)(2)(a) does not apply to crimes committed in such a brief period of time.
 
 
 4
 Initially, we note that whether Dyess' fraud involved "more than minimal planning" is a factual determination for the district court to resolve. United States v. Lennick, 917 F.2d 974, 979 (7th Cir.1990). Consequently, we accord the district court's conclusion that Dyess' crime involved "more than minimal planning" "due deference" and will not overturn such a finding unless it is clearly erroneous. Id. Here, the record adequately supports the district court's factual findings regarding Dyess' conduct.
 
 
 5
 Dyess' assertion that his offense conduct only lasted a few days is a misrepresentation. The record indicates that Dyess' fraud began in May of 1990 when he lied to Ameritrust National Bank's ("ANB") vice-president in order to obtain instant credit from the bank. He told ANB's vice-president that he had just come into a substantial inheritance from his father and that he owned a trucking company employing forty drivers when, in reality, Dyess had received no inheritance and he ran a trucking company with two employees. The record also supports the district court's finding that throughout July of 1990 Dyess repeatedly transferred bogus checks between the ANB in Elkart, Indiana and the Levy County State Bank ("LCSB") in Florida, culminating in a loss of $400,000.[1]
 
 
 6
 Dyess' total offense conduct amply supports a finding of "more than minimal planning." His contention that Guidelines § 2F1.1(b)(2)(a) does not apply to situations in cases where the crime occurred over a short period of time lacks merit. See United States v. De Felippis, No. 90-3603, slip op. at 4 (7th Cir. Dec. 6, 1991) (defendants "repeated acts over several weeks" supported a "more than minimal planning" enhancement). Furthermore, this court has upheld "more than minimal planning" enhancements in cases where a small amount of planning was involved. See Lennick, 917 F.2d at 979 (collecting cases allowing enhancement for activity involving less elaborate schemes and upholding enhancement for conduct involving two-letter paper trail); United States v. Ojo, 916 F.2d 388, 392 (7th Cir.1990) (defendant possessed multiple forms of false identification); see also United States v. Fox, 889 F.2d 357, 361-62 (1st Cir.1989) (cited with approval in Lennick, 917 F.2d at 979 and involved two fraudulent bank loans).
 
 
 7
 Dyess' argument that the district court erred in rejecting an adjustment of his sentence for acceptance of responsibility fares no better than his more than minimal planning claim. Guidelines § 3E1.1 grants a defendant a two-level reduction in his offense level if the defendant can "clearly demonstrate a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Whether the defendant accepts responsibility for his crime is a factual determination for the district court which is subject to the clearly erroneous standard and entitled to great deference on review. United States v. Blas, 947 F.2d 1320, 1330 (7th Cir.1991).
 
 
 8
 Here, Dyess made a post-trial admission of guilt to the probation officer. Although conviction by trial does not preclude a reduction for acceptance of responsibility, in such circumstances the reduction is justified only in "rare circumstances" such as "where a defendant goes to trial to preserve issues that do not relate to factual guilt." Guidelines § 3E1.1, Application Note 2. The district court found that Dyess' case did not involve "rare circumstances" because at trial he denied scienter and intent to defraud in an attempt to obtain an acquittal.[2]
 
 
 9
 Furthermore, the district court did not believe that Dyess' post-trial declarations of guilt were sincere, rather it found that Dyess was merely trying to obtain "remorse points." The record indicates that the district court carefully considered a number of factors listed in the Application Notes of Guidelines § 3E1.1 in making this determination. First, the court stated that Dyess' "steam collapsed when both banks dishonored his check," thus he did not voluntarily withdraw from his crime. Second, the district court found that although Dyess made a statement to the FBI prior to trial, this statement was not a "voluntary and truthful admission of involvement" in the offense because it did not deal with the checks at issue. In any event, the district court found that Dyess' successful attempt to suppress the statement indicated that he did not intend to accept responsibility for his crime at that time.[3] Third, the district court noted that Dyess' efforts to surrender were ultimately not successful. Finally, the district court considered the timeliness of Dyess' protestation of guilt and observed that it occurred "quite late" in the proceeding. The district court's findings are supported by the record. Thus, the district court's determination that Dyess had not met his burden in demonstrating that he accepted responsibility for his criminal conduct was not clearly erroneous.
 
 
 10
 For all of the above reasons, Dyess' sentence is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Dyess' check kiting scheme involved covering his bad Indiana paper (checks drawn from the ANB) with bad paper from Florida (checks drawn from the LCSB) and vice versa
 The record indicates that from July 6, 1990, until July 22, 1990, Dyess passed at least six worthless checks between the ANB and the LCSB.
 
 
 [2]
 Rare circumstances may exist "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." Guidelines § 3E1.1, Application Note 2
 
 
 [3]
 The government did not oppose Dyess' motion to suppress his pre-trial statement