USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2213

 UNITED STATES,

 Appellee,

 v.

 SAVOTH PHATH,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF RHODE ISLAND

 [Hon. Mary M. Lisi, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 Stahl, Circuit Judge,
 and Lynch, Circuit Judge.
 
 

 Thomas G. Briody for appellant.
 Margaret E. Curran, Assistant United States Attorney, with
whom Kenneth P. Madden, Assistant United States Attorney, and
Sheldon Whitehouse, United States Attorney, were on brief, for
appellee.

May 20, 1998

 
 

 STAHL, Circuit Judge. Following a one-day trial
defendant-appellant Savoth Phath was convicted of bank fraud. See18 U.S.C. 1344. He appeals his conviction on three grounds:
erroneous admission of opinion evidence, erroneous jury
instructions, and an improper sentence adjustment for more than
minimal planning. We affirm the conviction but vacate the sentence
and remand for re-sentencing.
 I.
 On June 5, 1996, Savoth Phath deposited two counterfeit
checks into his savings account at a branch of Fleet Bank in
Providence, Rhode Island. Bank surveillance cameras recorded the
transaction. One check for $4,340.75, payable to Mao Mich, was
drawn on the Fleet bank account of The Worcester Company; the other
check for $1,150, payable to Thai Sey, was drawn on the Fleet Bank
account of Main Street Textiles. The next day, Phath withdrew
$5,000 from the same savings account.
 On March 7, 1997, after being arrested by Secret Service
agents, Phath waived his privileges under Miranda v. Arizona, 384
U.S. 436 (1966), and related the following facts to the agents. 
Phath explained that a stranger had approached him at the Foxwoods
Casino in Connecticut, and asked him if he had a bank account.
After Phath answered yes, the stranger offered him an unspecified
amount of money to cash some checks. When Phath agreed, the
stranger gave him six checks, and then asked if Phath knew anyone
else who would cash checks. Phath again said yes. He subsequently
deposited the two checks described above in his own account, gave
two to someone he knew as "Samman," and two to someone he did not
know. The day after he deposited the checks, Phath withdrew $5,000
from his account, collected money from the other two individuals,
and gave the total sum to the stranger who, in turn, paid Phath
$500.
 II.
A. Admission of Evidence
 Phath asserts that the district court abused its
discretion by admitting a Secret Service case agent's expert
opinion testimony because the testimony lacked foundation. The
agent testified that he knew of cases in which other defendants had
deposited counterfeit checks into their bank accounts. In Phath's
view, this testimony undermined the main theory of his defense:
that his use of his own bank account to cash the checks was
evidence that he did not know that the checks were counterfeit. We
disagree.
 During the prosecutor's redirect examination of the
agent, the district court sustained objections to the following two
questions: 1) "And when you first learned that [the checks were
deposited into an account that was in the Defendant's name] during
the course of the investigation, did that strike you in any way?";
2) "When you first learned that during the course of the
investigation, did you have any thoughts on that at all?" The
court then overruled an objection to the next question, "When you
first learned it during the course of the investigation, did you
find that unusual at all?" After the agent responded that he "had
seen that done before in other cases," the court denied Phath's
motion to strike the testimony.
 We reject Phath's claim that the district court
improperly admitted expert opinion evidence under Fed. R. Evid.
702. First, we doubt whether the third question even asked for an
opinion. Instead, we interpret the question as calling for a fact
response. Unlike the first two questions, the third question asked
the agent whether he found the deposits unusual, implying that the
answer should be based on the agent's experience, not his opinion. 
In fact, the agent's response "I had seen that done before in
other cases" confirms that the agent understood that the
prosecutor was questioning the agent's experience.
 Even assuming that Phath correctly characterizes the
evidence as inadmissible expert opinion evidence, we are confident
that the error is harmless. See Molloy v. Blanchard, 115 F.3d 86,
93 (1st Cir. 1997) (holding that the standard for harmless error is
whether the error swayed judgment); see also Kotteakos v. United
States, 328 U.S. 750, 765 (1946). The evidence against Phath was
strong. At most, the agent's statement conveyed that other people
have deposited counterfeit checks into their own accounts, a fact
that does not dissipate the force of Phath's defense that he did
not know the checks were counterfeit.
B. Jury Instructions
 Phath asserts that the district court erroneously
instructed the jury and, in doing so, prejudiced his defense. The
district court instructed the jury that the government was required
to prove beyond a reasonable doubt:
 One, that the Defendant engaged in a scheme or
 artifice to defraud a financial institution or
 that he made false statements or misrepre-
 sentations to obtain the money or other property
 from a financial institution by false pretenses;
 two, that the financial institution was then
 federally insured; and three, that the Defendant
 acted knowingly.

 The court further instructed the jury that the phrase
"'false statements and misrepresentations' means any statement or
assertion which concerns a material fact and which, at the time it
was made, was either known to be untrue or was made with reckless
indifference to its truth or falsity."
 Phath objects to the definition because he believes it was
similar to a "willful blindness" instruction yet was unaccompanied
by a warning that a defendant cannot be convicted based on
negligence. Phath further argues that a warning instruction was
critical because he, reasonably, did not know that the checks were
counterfeit. The court's instruction, he contends, likely led the
jury to confuse reckless indifference with mere negligence. We
reject this argument.
 "We review allegedly erroneous jury instructions de novoto determine [whether] the instructions, taken as a whole, show a
tendency to confuse or mislead the jury with respect to the
applicable principles of law." United States v. Fulmer, 108 F.3d
1486, 1494 (1st Cir. 1997) (citing Tatro v. Kervin, 41 F.3d 9, 14
(1st Cir. 1994)). 
 Assuming, arguendo, that the court's definition of "false
statements and misrepresentations" was a misstatement of law, the
instructions, in their entirety, nonetheless accurately reflected
the elements of 18 U.S.C. 1344. The challenged instructions were
a small part of the court's instructions regarding intent. In
addition to the definition cited above, the court stated "False
statements and misrepresentations include not only actual lies, but
half-truths as well. [They] also include . . . any false pretense,
promise or knowing concealment of facts which are material . . . ." 
 Further, the district court defined the third element,
knowing conduct, instructing:
 The Government must prove beyond a reasonable
 doubt . . . that the Defendant acted knowingly
 and with specific intent to defraud. An act is
 done knowingly if it is done voluntarily and
 intentionally and not because of ignorance,
 mistake or accident. To act with intent to
 defraud means to act knowingly and with the
 intention or the purpose to deceive or cheat. 
 An intent to defraud is accompanied ordinarily
 by a desire or a purpose to bring about some
 gain or benefit to oneself or some other person
 or by a desire or a purpose to cause some loss
 to some purpose. Thus, the Government must
 prove that the Defendant knew that scheme to
 defraud a financial institution existed and that
 he willfully participated in that scheme.

 Considering the court's entire definition of "false
statements and misrepresentations" and its careful exposition of
the intent element, we find that even if the challenged sentences
were erroneous, they were not prejudicial.
C. More than Minimal Planning 
 Phath also challenges the two-level increase imposed
pursuant to U.S.S.G. 2F1.1(b)(2) for more than minimal planning. 
The district court's judgment that an offense involves more than
minimal planning is a factual finding that we overturn only if it
is clearly erroneous. See United States v. Rust, 976 F.2d 55, 57
(1st Cir. 1992). After reviewing the transcript of the sentence
hearing, we conclude that the court's decision was clearly
erroneous.
 The Sentencing Guidelines Commentary describes "more than
minimal planning" as:
 more planning than is typical for commission of
 the offense in a simple form. "More than
 minimal planning" also exists if significant
 affirmative steps were taken to conceal the
 offense . . . . "More than minimal planning" is
 deemed present in any case involving repeated
 acts over a period of time, unless it is clear
 that each instance was purely opportune. 
 U.S.S.G. 1B1.1, Application Note 1(f).

 In finding more than minimal planning, the district court
looked at the "totality of the circumstances and the scheme
itself." According to the court,

 The defendant readily agrees to participate
 himself and, indeed, recruits two others, by his
 own admission. So not only does he go to the
 bank twice, he recruits two others. He takes
 the check from Gino[, the stranger,] to hand off
 to the two others and then collects the proceeds
 for Gino, again, by his own admission, from
 those two that he recruited. Taking all of that
 into account, this is not an offense in its
 simplest terms. It has several layers of
 intricacy which are designed to conceal the
 offense itself.
 
 The government urges us to uphold the sentence enhancement
because Phath's acts were not purely opportune. However, we do
not need to decide whether Phath's acts were purely opportune
because Phath's acts were not "repeated acts over a period of
time," as described in the first clause of the guideline section
relied upon by the government. There is no argument that Phath
took "significant affirmative steps . . . to conceal the offense,"
which would also trigger the guideline.
 Phath's crime was simple and short-lived. That Phath went
to the bank two times to complete the simple acts of depositing
checks and withdrawing funds does not strike us as a complication
of the basic crime. Allowing a day to lapse between deposit and
withdrawal allows the bank adequate time to credit the account. In
total, Phath began and completed the crime within forty-eight
hours, a relatively short period of time. 
 The only plausible reason for the enhancement was Phath's
recruitment of two others to negotiate four of the six counterfeit
checks. Taking Phath's story at face value, which we do because
there is no contradictory evidence, the stranger asked Phath to
recruit the others when he recruited Phath. Phath complied with
the stranger's request as part of the same criminal act during the
same short time period. Guided by the sentencing guidelines and
circuit case law, we do not interpret Phath's acts to involve morethan minimal planning.
 The application notes to the sentencing guidelines provide
an illustration of minimal planning and more than minimal planning
in the case of embezzlement. "[A] single taking accomplished by a
false book entry would constitute only minimal planning. On the
other hand, creating purchase orders to, and invoices from, a dummy
corporation for merchandise that was never delivered would
constitute more than minimal planning, as would several instances
of taking money, each accompanied by false entries." Id. Phath's
acts were more similar to the simple false book entry than to the
enhanced crime as they would have been had he created the
counterfeit checks or made repeated agreements with the stranger. 
 In addition, Phath's crime is not comparable to those for
which we have previously upheld sentence enhancements for more than
minimal planning. See United States v. Boots, 80 F.3d 580, 595
(1st Cir. 1996) (finding no clear error in light of fact that
defendants had engaged in multiple acts over a several month
period); United States v. Santiago-Gonzalez, 66 F.3d 3, 7 (1st Cir.
1995) (finding no clear error where defendant had made seven
separate "false entries" for the purpose of defrauding an insurance
company over several months); United States v. Beauchamp, 986 F.2d
1, 5 (1st Cir. 1993) (finding no clear error where defendant had
engaged in an extensive cover-up plan which included lying to
investigators and recruiting others to lie to them); Rust, 976 F.2d
at 57 (1st Cir. 1992) (finding no clear error where defendant had
submitted 23 intricately altered vouchers over four years). 
Compared to the crimes outlined in these cases, Phath's crime was
short-term and simple.
 Similarly, other circuits have applied the enhancement
only to crimes involving repeated acts over a period of time. See,
e.g., United States v. Mau, 45 F.3d 212, 214 (7th Cir. 1995)
(finding no clear error where defendant had kited a huge volume of
checks over seven months); United States v. Brach, 942 F.2d 141,
145 (2d Cir. 1991) (finding no clear error given defendant's
several-month scheme that involved securing a large monetary
advance from the defrauded party); United States v. Lennick, 917
F.2d 974, 978-80 (7th Cir. 1990) (holding that the enhancement is
usually applied "to factual scenarios involving clear examples of
repeated complex criminal activity," and that a false statement to
a federal agent and other cover-up activity were sufficient for
enhancement); United States v. Bakhtiari, 913 F.2d 1053, 1063 (2d
Cir. 1990) (finding no clear error where defendant, impersonating
a State Department employee, had numerous contacts with broker),
cert. denied, 499 U.S. 924 (1991).
 Although our research uncovered no case in which we
overturned a sentence enhancement for more than minimal planning,
other circuits have overturned such enhancements for more or
equivalent planning than that engaged in by Phath. See United
States v. Maciaga, 965 F.2d 404 (7th Cir. 1992) (overturning
sentence enhancement of a security guard who stole money on two
occasions after deactivating bank alarm). Indeed, Phath's crime
seems comparable to the crimes in two cases in which appeals courts
overturned the enhancement. United States v. Cropper, 42 F.3d 755
(2d Cir. 1994) (holding that the enhancement was not warranted
where defendant drove up to warehouse in taxicab that was too small
to carry stolen boxes, delaying defendant in commission of crime);
United States v. Bean, 18 F.3d 1367 (7th Cir. 1994) (overturning
the enhancement where defendant had engaged in one cycle of check
kiting and then attempted to obtain loan to pay bank).
 Almost all crimes involve some degree of planning. We do
not find the amount of planning here sufficient to justify the
enhancement for more than minimal planning.
 We therefore affirm Phath's conviction and remand for re-
sentencing consistent with this opinion.