**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard C. WYATT, Defendant–**
**Appellant.**

No. 98–2141.

United States Court of Appeals,
Seventh Circuit.

Argued March 2, 1999.

Decided May 27, 1999.

Stephen P. Sinnott (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, Peggy A. Lautenschlager, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

Christopher T. Van Wagner (argued), Madison, WI, Tracey A. Wood, Van Wagner & Wood, Madison, WI, for Defendant–Appellant.

Before CUDAHY, ESCHBACH, and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Richard Wyatt moved to suppress his confession concerning the robbery of several banks in Wisconsin and elsewhere. After the district court denied his motion, Wyatt entered a conditional guilty plea to one count of bank robbery, 18 U.S.C. § 2113(a), reserving his right to appeal the denial of his motion. Wyatt appeals, arguing that his confession should have been suppressed because authorities failed to honor his request for an attorney and also failed to scrupulously honor his right to remain silent. We affirm.

In November 1997, Sergeant Salo of the Tomah, Wisconsin, police department, received a tip that a man fitting the description of a suspect in a recent Tomah bank robbery had been seen spending large sums of money at bars in LaCrosse, Wisconsin. Salo assigned Timothy Linenberg, a Tomah police officer, to investigate the tip. At one of the bars, La Mirage, the owner identified Wyatt and gave Linenberg a license plate number. After determining that the plate was registered to "Thomas C. Mullin," Linenberg and one of the two uniformed LaCrosse police officers accompanying him approached Wyatt in the bar and asked to speak with him outside. Wyatt agreed, and once outside, he was advised by one of the LaCrosse officers at approximately 8:00 p.m. that Linenberg was investigating a robbery and had questions for him. When asked, Wyatt identified himself as Thomas Mullin, but claimed that he did not have a middle initial or any identification. One of the LaCrosse officers conducted a pat-down of Wyatt and remarked that he felt a wallet. Without being asked, Wyatt removed the wallet from his pants pocket and held it in one hand as he showed it to the officer, but refused to permit him to search it. Wyatt then returned his wallet to his pants pocket.

When Linenberg inquired as to Wyatt's employment, Wyatt replied that he worked for Texaco and traveled frequently. He refused to respond when Linenberg asked for a phone number to verify his employment or to Linenberg's comment that an employee who traveled frequently should have a contact number for the employer. Wyatt instead asked the purpose of the questions, and Linenberg advised that he

was a suspect in the Tomah bank robbery. Wyatt then said, "I think I should talk to a lawyer." In response, Linenberg turned to the LaCrosse officers and requested that Wyatt be conveyed to the police station, but stated that they need not handcuff him. One of the officers accordingly asked Wyatt if he would accompany them to the station, and Wyatt assented, asking that the LaCrosse officers convey him after the interview at the police station back to his car, which was parked at La Mirage. Wyatt was transported to the police station uncuffed, and at approximately 8:30 p.m., Linenberg told Wyatt that he was under arrest for robbery, advised him of his constitutional (*Miranda*) rights and asked him if he was willing to answer questions or make a statement. Wyatt refused to answer any questions and signed a form indicating that after being advised of his rights, he was unwilling to answer questions or make a statement. The officers did not ask him anything further, but escorted him to a locked interview room. Minutes later, they returned to find Wyatt attempting to crumple a social security card. They took the card from him and noted that the social security card reflected his true name as "Richard Carl Wyatt." They then searched him, recovering, among other things, two bait bills (marked money) that were taken during the Tomah robbery. Wyatt was transferred to a county jail in Sparta, Wisconsin. Linenberg and a Tomah police sergeant contacted FBI special agent Jeffrey Hill that night upon learning Wyatt's true identity. They advised agent Hill that Wyatt, while in custody, had not invoked his right to counsel, but had refused to answer questions or make a statement after *Miranda* warnings. Hill discovered that Wyatt was a suspect in a number of bank robberies in Wisconsin and other states.

The following day, November 9, 1997, Hill confronted Wyatt shortly after noon. Hill told Wyatt he knew his true identity, that there were outstanding bank robbery warrants from other jurisdictions and that Wyatt "was also going to be charged for three bank robberies that he perpetrated [and] it looked like there was at least one in Iowa that he was good for in addition to the Tomah robbery." He further advised Wyatt that he might "get some consideration" if he cooperated, and asked him if he wanted to make a statement. Wyatt agreed, and on November 9th at approximately 12:40 p.m., Hill, accompanied by Sergeant Salo, read Wyatt his rights. Wyatt read and signed a *Miranda* waiver form, and confessed to seven bank robberies, including the Tomah robbery. Thereafter, Wyatt was charged with bank robbery, in violation of 18 U.S.C. § 2113(a). Before trial, Wyatt moved to suppress his confession, arguing that: (a) Hill[1] improperly reinitiated interrogation after he had refused to answer questions; (b) Hill violated his right to consult an attorney and have one present during interrogation; and (c) Linenberg and the LaCrosse police officers did not have probable cause to arrest him.

Wyatt's motion was assigned to a magistrate judge by the presiding district court judge. Following an evidentiary hearing at which Linenberg and Hill testified, the magistrate judge recommended that the suppression motion be denied. The magistrate judge concluded that Wyatt's statement, "I think I should talk to a lawyer" was an unambiguous request for an attorney, but was ineffective to invoke his Fifth Amendment right to counsel because Wyatt was not in custody when he uttered it. The magistrate judge further concluded that Linenberg and Hill had scrupulously honored Wyatt's right to remain silent because Linenberg immediately ceased questioning after Wyatt invoked

---

1. We note that it was Linenberg and the LaCrosse officers, not Hill, who earlier questioned Wyatt, and who advised Hill that Wyatt had not invoked his right to counsel and refused to answer questions or make a statement. In fact, Hill had not encountered Wyatt prior to interrogating him on November 9, 1997.

the right on November 8th and Hill did not resume questioning him until November 9th after waiting almost 16 hours and providing Wyatt with new *Miranda* warnings. Wyatt objected to each of these findings, arguing that he was in custody while being questioned outside La Mirage because Linenberg and a second officer escorted him out of the bar while a third blocked the bar's front entrance, Linenberg told him he was a bank robbery suspect and he was subjected to a patdown search. Wyatt further contended in objecting to the magistrate judge's findings that Linenberg had no credible evidence upon which to arrest him and furthermore that Hill had attempted to wear down his resolve to maintain his silence by describing the evidence against him and interrogating him about the same crime that he had earlier refused to discuss.

The district court reviewed the magistrate's recommended findings and conclusions and, without permitting further argument, adopted each of them, except that it deemed Wyatt's statement regarding an attorney ambiguous and therefore insufficient to invoke the right to counsel. Wyatt subsequently entered a guilty plea pursuant to a written plea agreement to a single bank robbery count, reserving his right to appeal the denial of his motion to suppress his confession as authorized by Rule 11(a)(2) of the Federal Rules of Criminal Procedure. The district court sentenced Wyatt to 78 months' imprisonment, to be followed by three years of supervised release, and ordered him to pay $6,679 in restitution.

Wyatt argues on appeal that the district court should have suppressed his confession and alleges that (a) Hill interfered with his right to remain silent by reinitiating interrogation after he had refused to answer questions, and (b) he invoked his right to consult with and have an attorney present during questioning when he noted to Linenberg and the LaCrosse police officers, "I think I should talk to a lawyer." Wyatt has not raised his contention that there was no probable cause for his arrest and thus we consider it abandoned.

■■■ This court reviews de novo the district court's determination as to whether Wyatt was in custody under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *See United States v. Salyers*, 160 F.3d 1152, 1159 (7th Cir.1998). A suspect is in custody for *Miranda* purposes if he is subject to "a restraint on freedom of movement of the degree associated with a formal arrest." *United States v. James*, 113 F.3d 721, 727 (7th Cir.1997) (internal quotation marks and citation omitted). In conducting the closely-related inquiry into whether a consent to search is voluntary under the Fourth Amendment, we have considered

(1) whether the encounter occurred in a public place; (2) whether the suspect consented to speak with the officers; (3) whether the officers informed the individual that he was not under arrest and was free to leave; (4) whether the individuals were moved to another area; (5) whether there was a threatening presence of several officers and a display of weapons or physical force; (6) whether the officers deprived the defendant of documents she needed to continue on her way; and (7) whether the officers' tone of voice was such that their requests would likely be obeyed.

*United States v. Yusuff*, 96 F.3d 982, 985–86 (7th Cir.1996). Because the inquiry under *Miranda* also turns on the totality of the circumstances, a suspect is not automatically deemed to be in custody simply because he is questioned in a "coercive environment" such as a station house. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam). In addition, "Miranda warnings are not required merely because the individual questioned by law enforcement officers is a suspect or is the focus of a criminal investigation." *United States v. Jones*, 21 F.3d 165, 170 (7th Cir.1994) (citing *Mathiason*, 429 U.S. at 495, 97 S.Ct. 711). Rather, we have stated that

In order to establish a custodial relationship, a defendant must either show that he or she was formally arrested, or that he or she was subjected to restraints of freedom such that the conditions of a formal arrest were closely approximated or actually attained.... In the latter case, the test is not whether the defendant was under a subjective belief that his or her movements were restricted, but whether a reasonable person in the defendant's position would believe that he or she was free to leave. Thus, [t]here is no 'seizure' subject to the Fourth Amendment unless a reasonable person in [defendant's] position would have believed that he was not free to ignore [the police] and continue on his way; the test is objective.

*United States v. Lennick,* 917 F.2d 974, 977 (7th Cir.1990) (alterations in original) (citations omitted). Thus, "[t]he test for whether an individual is 'in custody' under *Miranda* outside the prison context, for instance during a Terry stop, is 'how a reasonable man in the suspect's position would have understood his situation.'" *United States v. Menzer,* 29 F.3d 1223, 1232 n. 8 (7th Cir.1994) (quoting *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). This court uses a totality of the circumstances test "to determine whether a reasonable person would have believed he or she was free to leave," weighing "such factors as the length of the interrogation, the purpose of the questioning, and the location of the interrogation." *Lennick,* 917 F.2d at 977.

 Wyatt argues that he was in custody within the meaning of *Miranda* when he was questioned outside La Mirage because authorities conducted a patdown search, interrogated him at length and asked to search his wallet. We disagree. Linenberg and a LaCrosse officer asked, and did not demand, that Wyatt accompany them out of the bar, and Wyatt agreed. As the magistrate judge concluded, "[t]here is no evidence that Investigator Linenberg or Officer Hauser wrested consent from Wyatt by any coercive word or act." Moreover, the magistrate found no evidence that the officers physically compelled Wyatt to follow them out of the bar. *Lennick,* 917 F.2d at 978 (citing as evidence that a suspect was not in custody that police officers "did not take [the suspect] to an interrogation room or otherwise remove him from the public hallway"). Additionally, nothing in the record suggests that Wyatt's exit from La Mirage was involuntary. Once outside, Wyatt was questioned in a well-lit public area near the bar's front entrance. Although Wyatt contends that he was in custody at that point because Linenberg's aim in questioning him was to secure his confession to the Tomah robbery, this contention is unavailing because "the purpose of the questioning is but one factor to consider in the totality of the circumstances." *Id.* Linenberg testified that he stood approximately three feet from Wyatt during the interview, and, as the magistrate judge concluded, there is no record evidence that Wyatt's freedom of movement was otherwise impaired. *See United States v. Bush,* 820 F.2d 858, 862 (7th Cir.1987) (noting in support of finding that suspect was not in custody that during questioning, he was "neither under arrest nor were there any restraints on his freedom of movement"). And although Wyatt argues that a reasonable person subject to a pat-down search would not feel free to leave, we have previously rejected his argument, *see Yusuff,* 96 F.3d at 988, and note in addition that it was Wyatt, on his own initiative, who removed his wallet, and that the authorities honored his refusal to consent to its search. Moreover, at no time during the brief interview did Linenberg advise Wyatt that he was under arrest. *See United States v. Salvo,* 133 F.3d 943, 951 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 1805, 140 L.Ed.2d 943 (1998). No guns or other weapons were drawn at any point, and there is otherwise no record evidence of a "show of force or authority." *Salyers,* 160 F.3d at 1160. The officers did not deprive Wyatt of any documents he

needed to continue on his way. Nor did they handcuff him. At the conclusion of the interview, the LaCrosse officers asked if Wyatt would accompany them to the police station, and conveyed him there in a squad car uncuffed and only after he agreed to go. *See Jones*, 21 F.3d at 170 (suspect questioned outside his motel room and taken uncuffed to police station).

Moreover, Wyatt's custody argument mirrors that rejected in *Yusuff*. In that case, authorities approached Yusuff, a drug-trafficking suspect, at an airport, briefly inquired as to her identity and the purpose of her trip, searched her bag and conducted a pat-down search. The search revealed a hard lump in a coat pocket. When asked what the lump was, Yusuff responded that it was "drugs," and, when asked how much, responded, "700 grams." *Yusuff*, 96 F.3d at 984. Yusuff moved to suppress her admission that the lump was 700 grams of drugs, arguing that she was entitled to *Miranda* warnings before the pat-down search and questioning. We rejected this argument, noting that

> the pat down was consensual and occurred in a busy, public concourse of Chicago's O'Hare International Airport. . . . Merely by asking what the lump was did not turn the consensual encounter into a "custodial interrogation." Although Yusuff claims that she did not feel free to leave, that is only because she, objectively, knew that the lump was a smuggled bundle of heroin. We believe that a reasonable person, after consenting to a brief pat down search in a busy airport, would not believe themselves in custody if an officer felt a lump (e.g., a back brace or purse) and asked what it was. Thus, we hold that . . . [the] question of "What's this?" did not constitute custodial interrogation requiring the *Miranda* warnings.

*Id.* at 988. Like Yusuff, Wyatt was questioned in a well-lit public place during a consensual encounter, was subjected to a brief pat-down but never physically restrained. Wyatt's subjective impression that he was not free to leave, resulting perhaps from his efforts to conceal his true identity, does not render his consensual encounter with Linenberg and the La-Crosse police officers custodial. We agree with the trial judge's ruling and are convinced that Wyatt was not in custody for *Miranda* purposes when he was questioned at La Mirage.

■ Accordingly, Wyatt's argument that his ambiguous statement that "I think I should talk to a lawyer" invoked his right to counsel is without merit. The Fifth Amendment right to counsel safeguarded by *Miranda* cannot be invoked when a suspect is not in custody, *see United States v. LaGrone*, 43 F.3d 332, 337 (7th Cir.1994), even if in anticipation of future custodial interrogation, *see McNeil v. Wisconsin*, 501 U.S. 171, 182 n. 3, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) ("We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.'"); *LaGrone*, 43 F.3d at 339 (noting that "in order for a defendant to invoke his *Miranda* rights the authorities must be conducting interrogation, or interrogation must be imminent"); *Alston v. Redman*, 34 F.3d 1237, 1249 (3d Cir.1994) (holding that suspect's confession to several robberies, given after the suspect had waived his *Miranda* rights during an earlier interrogation and had subsequently signed a form while not under interrogation refusing to answer further questions without an attorney present, was admissible because the invocation form was signed when the suspect "was not within 'the context of custodial interrogation'"). Because Wyatt could not invoke his *Miranda* right to counsel when he was not in custody, his reliance on *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), is misplaced. In that case, Edwards refused during his initial interrogation to submit to further questioning without an attorney present, and the interrogation ceased. The next day, however, he was reinterrogated with no

attorney present and confessed to a crime. The Supreme Court agreed with Edwards that his confession should have been suppressed because it was obtained in violation of *Miranda*:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused ... is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id.* at 484–85, 101 S.Ct. 1880; *see also United States v. McKinley*, 84 F.3d 904, 908 (7th Cir.1996) ("If a suspect invokes his right to counsel under *Miranda*, he is not subject to further interrogation until counsel is present or until the suspect himself initiates further discussions."). Because Wyatt did not properly invoke the right to counsel, the absolute bar announced in *Edwards* against resuming interrogation of a defendant who has invoked the right to counsel does not apply.

■ Wyatt's second contention that his right to remain silent was not scrupulously honored is likewise meritless because authorities ceased questioning him after he refused to make a statement, waited several hours before reinitiating questioning and resumed it only after again advising him of his *Miranda* rights. *See Michigan v. Mosley*, 423 U.S. 96, 104–05, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975) (authorities "scrupulously honored" defendant's "right to cut off questioning" when they ceased interrogation after suspect refused to make a statement while in police custody, waited two hours to resume interrogation, provided fresh *Miranda* warnings and limited scope of inquiry to unrelated offenses). While Wyatt notes that Hill outlined the evidence against him before giving him fresh *Miranda* warnings, by itself this misstep is not a *Mosley* violation. *See United States v. Pugh*, 25 F.3d 669, 673 (8th Cir.1994) (failure to give fresh *Miranda* warnings before reinterrogating suspect did not run afoul of *Mosley* because authorities honored suspect's earlier decision to cut off questioning).

Wyatt nonetheless argues that Hill's interrogation of him violated *Mosley* because it involved the same crime about which he had earlier refused to answer questions—the Tomah robbery. Wyatt reads *Mosley* as requiring authorities to restrict reinterrogation to crimes unrelated to any offenses that a suspect has earlier refused to discuss. *See Mosley*, 423 U.S. at 106, 96 S.Ct. 321 (noting as evidence that the authorities scrupulously honored Mosley's right to remain silent that "the police ... restricted the second interrogation to a crime that had not been a subject of the earlier interrogation."). We disagree. As we have previously held, "the constitutionality of a subsequent police interview depends not on its subject matter but rather on whether the police ... sought to undermine the suspect's resolve to remain silent." *United States v. Schwensow*, 151 F.3d 650, 659 (7th Cir.1998). Therefore, we are convinced that Wyatt has failed to establish that Hill, Linenberg and the LaCrosse police did not scrupulously honor his right to remain silent.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.