NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 26 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| EDUARDO NAVARETTE, | No. 16-55630 |
| Petitioner-Appellant, | D.C. No. 2:14-cv-08457-PSG-MRW |
| v. | |
| WILLIAM JOE SULLIVAN, Warden, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted February 13, 2019
Pasadena, California

Before: FISHER, CALLAHAN and OWENS, Circuit Judges.

Eduardo Navarette appeals the denial of his 28 U.S.C. § 2254 habeas petition. We have jurisdiction under 28 U.S.C. § 1291, we review de novo, *see Gulbrandson v. Ryan*, 738 F.3d 976, 986 (9th Cir. 2013), and we affirm.

Under § 2254(d)(1), we may not grant habeas relief unless the California Court of Appeal unreasonably applied *Michigan v. Mosley*, 423 U.S. 96 (1975).

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

This standard is "difficult to meet" and is satisfied only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Navarette "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Navarette has not met this standard. Under *Mosley*, 423 U.S. at 104, "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" Here, a fairminded jurist could conclude that the police scrupulously honored Navarette's March 12 invocation of his right to cut off questioning because: (1) he was provided full *Miranda* warnings on March 12; (2) when he invoked his right to silence on March 12, the police immediately ceased questioning; (3) the police thereafter did not engage in repeated attempts to question him in order to wear down his resistance; (4) substantial time (two days) elapsed between the March 12 invocation and the March 14 resumption of questioning; (5) the March 12 questioning and the March 14 questioning were conducted by different officers; (6) the police did not coerce Navarette to waive his *Miranda* rights; (7) although the police did not provide *Miranda* warnings at the

outset of the March 14 questioning, they did provide a full set of warnings (and obtain his waiver) before questioning him specifically about the crimes themselves; (8) Navarette's confession came after the mid-questioning *Miranda* warnings; and (9) although the two interviews involved the same crimes, courts applying *Mosley* have accorded this factor little weight. *See United States v. Hsu*, 852 F.2d 407, 410 (9th Cir. 1988); *Grooms v. Keeney*, 826 F.2d 883, 886 (9th Cir. 1987).

Although the police failed to give *Miranda* warnings at the outset of the second interview, several federal circuit decisions have held – albeit on different facts – that this failure is not necessarily dispositive under *Mosley*. *See United States v. Wyatt*, 179 F.3d 532, 534, 538 (7th Cir. 1999); *Weeks v. Angelone*, 176 F.3d 249, 267-69 (4th Cir. 1999), *aff'd on other grounds*, 528 U.S. 225 (2000); *United States v. Andrade*, 135 F.3d 104, 106-07 (1st Cir. 1998); *Kelly v. Lynaugh*, 862 F.2d 1126, 1130-31 (5th Cir. 1988); *United States v. Pugh*, 25 F.3d 669, 672-73 (8th Cir. 1994); *Stumes v. Solem*, 752 F.2d 317, 321 (8th Cir. 1985). The California Court of Appeal therefore reasonably applied *Mosley*.

**AFFIRMED.**

FILED

FEB 26 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FISHER, Circuit Judge, concurring:

I agree with the memorandum disposition that the California Court of Appeal did not unreasonably apply *Michigan v. Mosley*, 423 U.S. 96 (1975), within the meaning of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1).  I write separately, however, to explain that, were we to review Navarette's claim de novo, I would hold that the police did not scrupulously honor Navarette's invocation of his right to cut off questioning, as *Mosley* requires.

On March 12, 2011, Navarette was advised of his *Miranda* rights and invoked his right to cut off questioning.  On March 14, two police detectives resumed questioning.  They did not provide a fresh set of *Miranda* warnings at the outset of the questioning, as *Miranda* requires.  *See Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966) ("At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent."); *Sessoms v. Grounds*, 776 F.3d 615, 628 (9th Cir. 2015) (en banc) ("Interrogation does not begin once the officers get to the hard questions.  *Miranda* warnings are required before any interrogation begins."); *cf. Mosley*, 423 U.S. at 104 ("He was given full and complete *Miranda* warnings at the outset of the second interrogation.").  The detectives instead advised Navarette

that they were aware that he had invoked his right to remain silent, but that they intended to question him anyway. They told him, "You say when you are arrested that you don't want to say anything, but right now, we only have a form. This form is not regarding the case; it is just a form regarding questions about your life, your family, things like that." They implied, in other words, that he did *not* have the right to remain silent – exactly the opposite of what they should have said.

The two detectives then proceeded to question Navarette for 30 minutes before providing *Miranda* warnings. The detectives later readily acknowledged that this questioning was investigatory, which it plainly was. The detectives asked an array of questions that were designed to – and likely to – elicit incriminatory responses. They asked Navarette, for example, whether he had been arrested before; whether he had "a gun" or a "weapon"; whether he used or sold drugs; the contents of his jailhouse telephone conversation with his stepmother, a key prosecution witness; a range of questions pertaining to his opportunity to commit the alleged assaults – i.e., his school and work schedules and when he lived in the home in which the assaults occurred; and the identity of potential witnesses for the prosecution.

The two detectives, moreover, used the pre-*Miranda* questioning not only to obtain useful information but also to condition Navarette to answering their

2

questions and to ingratiate themselves to Navarette. They complimented him, for example, for doing well in school, making the varsity soccer team, being a hard worker and helping his mother and grandparents financially.

After 30 minutes, the detectives finally advised Navarette of his *Miranda* rights. The detectives then obtained Navarette's waiver of those rights and, ultimately, a confession. The prosecution relied heavily on that confession at trial, and Navarette was convicted.

The state implausibly suggests that this 30 minutes of questioning was permissible under *Miranda* because it was not "interrogation." Not so. To be sure, the Supreme Court has recognized that interrogation does not include words or actions on the part of the police that are "normally attendant to arrest and custody." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). This "'routine booking question' exception," however, applies only to questioning conducted "to secure the biographical data necessary to complete booking or pretrial services" – i.e., questions regarding a suspect's "name, address, height, weight, eye color, date of birth, and current age" that are "reasonably related to the police's administrative concerns." *Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990) (plurality opinion) (internal quotation marks omitted). The exception does *not* apply to questioning "conducted for an investigatory purpose and not for the booking

3

process," *United States v. Poole*, 794 F.2d 462, 466 (9th Cir. 1986) (as amended), or "reasonably likely to elicit an incriminating response from the suspect," *United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1981) (quoting *Innis*, 446 U.S. at 301). The questioning at issue here – investigatory, non-routine and likely to elicit incriminating responses – falls well *outside* the routine booking question exception.

The failure to provide warnings at the outset of the second interrogation therefore violated *Miranda*, and this *Miranda* violation was intentional. As we explained in *United States v. Williams*, 435 F.3d 1148, 1160 (9th Cir. 2006), "[b]ecause law enforcement officers generally retain control over the timing of a *Miranda* warning and giving the warning to a custodial suspect imposes only a minimal burden, the officer's deferral of the warning . . . supports an inference of deliberateness." *Cf. Missouri v. Seibert*, 542 U.S. 600, 620 (2004) (Kennedy, J., concurring) (recognizing a *Miranda* violation where "[t]he police used a two-step questioning technique based on a deliberate violation of *Miranda*").

The actions of the police in this case were not in keeping with *Mosley*. Rather than scrupulously honoring Navarette's right to cut off questioning, they interrogated him outside of *Miranda*. They did so extensively and deliberately. Accordingly, on de novo review, I would hold that the police obtained Navarette's

4

confession in violation of *Mosley*. I nonetheless concur in the decision of the court because the California Court of Appeal's contrary decision survives deferential review under AEDPA.