**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jordan L. MATCHOPATOW,
Defendant–Appellant.**

**No. 01–1458.**

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 7, 2001.

Decided Aug. 16, 2001.

one count of aggravated sexual abuse of a child on an Indian reservation in violation of 18 U.S.C. §§ 1153, 2241(a), (c). He appeals the district court's denial of his motion to suppress his confession as involuntary. We affirm.

In August 2000 a federal grand jury returned an indictment charging Matchopatow with sexual abuse of a juvenile female. The government's evidence included a confession that Matchopatow gave to authorities before charges were brought. Matchopatow ultimately moved to suppress this confession in the trial court. He claimed that: (1) "he did not knowingly, intelligently, or voluntarily waive his constitutional right against self-incrimination"; (2) "his request to the interrogating officer for an attorney was ignored"; and (3) "[he] responded to questions only because he was threatened and intimidated." A magistrate judge conducted an evidentiary hearing at which both Matchopatow and Menominee Tribal Police detective Chris Delabrue testified.

Delabrue testified that on July 21, 2000, he served on Matchopatow a restraining order, which detailed allegations that Matchopatow had sexually assaulted a young girl. On July 26 Delabrue went to the trailer where Matchopatow was staying and asked to speak with him regarding the allegations of abuse. Matchopatow testified that he was "expecting" Delabrue and that he accompanied him to the Menominee police station to "answer the questions that [Delabrue] needed to ask [him]." Matchopatow rode unhandcuffed in the back seat of Delabrue's unmarked squad car. The car did not have a "cage" divider between the front and back seats, and the back doors could be opened from the inside. At no time was Matchopatow told that he was under arrest. At the station Matchopatow was seated in an unsupervised lobby waiting area while Delabrue

Before COFFEY, KANNE, and WILLIAMS, Circuit Judges.

## ORDER

Jordan Matchopatow, a Native American, entered a conditional plea of guilty to

located a place to conduct the interview. Delabrue ultimately held the interview in a detective's office. Even though Delabrue did not consider Matchopatow to be under arrest at the time, he believed that Matchopatow was going to make incriminating statements and so he read him *Miranda* warnings from a card and secured a written waiver that also included the printed warnings. Matchopatow testified at the suppression hearing that he understood the *Miranda* warnings when they were given to him and agreed to answer questions.

The interview lasted approximately one and one-half hours. Delabrue began the interview by "slowly building up to what [he] was there about," and he admittedly "sweet-talked" Matchopatow by telling him he knew that Matchopatow had not meant to hurt the girl and was feeling guilty, and that it was in Matchopatow's best interest to tell the truth. During the interview Delabrue granted Matchopatow's request for water and a cigarette. According to Delabrue, Matchopatow was generally cooperative. Initially Matchopatow denied any sexual abuse and conceded only that he had physically abused the child. At the suppression hearing Matchopatow testified that at some point during the interview Delabrue became agitated, began to glare and speak in a "harsh tone," and promised to keep all statements "confidential." Matchopatow also stated that at some point he requested a lawyer, to which Delabrue responded that he could "get [Matchopatow] lawyered up if [he wanted]" and could "make this embarrassing for [him]." Matchopatow claims that Delabrue's demeanor and statements after his request for a lawyer caused him to confess to the sexual abuse. Delabrue flatly denied that Matchopatow requested a lawyer at any time during the interview.

Delabrue testified that he did assure Matchopatow that "any details of what he was saying would not leave that office, would not leave for public consumption." But in his own testimony Matchopatow acknowledged that he understood from these words that other people within the criminal justice system would have access to his statements and that he merely wanted to avoid the embarrassment of "going public with it" in the newspapers. He knew that his confession would go up the "chain of command" and that the chief of police, "the tribal prosecutor, the tribal judge and/or the federal prosecutor" would find out. By his own account, Matchopatow also admittedly understood, based on his prior convictions, that he would be prosecuted because of what he told the officer.

Eventually Matchopatow began detailing the sexual abuse and gave a tearful confession. At the conclusion of the interview Matchopatow requested a visit with his mother, which Delabrue granted before placing Matchopatow under arrest.

In recommending that Matchopatow's motion be denied, the magistrate judge concluded that Delabrue's testimony was more credible than Matchopatow's, and that Matchopatow had not requested a lawyer as he claimed. The magistrate judge also reasoned that Delabrue's "sweet-talking" tactics and assurances of confidentiality were permissible actions that did not render Matchopatow's confession involuntary. Matchopatow filed objections to the magistrate judge's proposed findings, but the district court adopted the recommendations and denied the motion to suppress. Matchopatow then entered a conditional plea of guilty, "reserving the right … to appeal … the adverse determination of the defendant's pretrial motion requesting the suppression of the defendant's statement to Sergeant Christopher Delabrue on July 26, 2000."

Matchopatow contends on appeal that his confession should have been suppressed by the district court because Delabrue "misadvised" him concerning the *Miranda* warnings by telling him during the interview that whatever he said would "not be used for public consumption." Matchopatow argues that he confessed only because he believed that his statements would remain private, and therefore his waiver of his Fifth Amendment rights was involuntary.

■ The government first questions Matchopatow's ability to raise the *Miranda* issue on appeal. Matchopatow entered a conditional guilty plea pursuant to Federal Rule of Criminal Procedure 11(a)(2).[1] The government, relying on *United States v. Doherty,* 17 F.3d 1056 (7th Cir.1994), asserts that Matchopatow waived his right to bring his *Miranda* argument on appeal because he failed to preserve that specific issue below. In *Doherty,* the defendant entered a conditional plea of guilty to check kiting in violation of 18 U.S.C. § 1344. He explicitly reserved for appeal the issue whether the district court erroneously denied his motion to dismiss the indictment on the ground that § 1344 does not cover bank fraud by check kiting. On appeal we rejected Doherty's argument, but remanded for resentencing. Doherty moved to withdraw his guilty plea on remand, which the district court denied, and Doherty again appealed, arguing that he should have been allowed to withdraw his plea because the indictment was duplicitous. We then held that Doherty's conditional plea "preserved only his right to argue on appeal that the bank fraud committed by check kiting that the indictment charged him with did not violate § 1344.... [H]e did not reserve the right

to challenge 'the sufficiency of the indictment' in other respects." *Id.* at 1058.

Like *Doherty,* Matchopatow preserved for appeal only those grounds raised in his motion to suppress: (1) "he did not knowingly, intelligently, or voluntarily waive his constitutional right against self-incrimination"; (2) "his request to the interrogating officer for an attorney was ignored"; and (3) "[he] responded to questions only because he was threatened and intimidated." The government contends that the issue Matchopatow raises on appeal–"[w]hether Mr. Matchopatow's statements to Officer Delabrue should be suppressed because Officer Delabrue did not properly advise Mr. Matchopatow of his *Miranda* rights"– is beyond the scope of his conditional plea.

This is a close question. It is undisputed that Delabrue initially administered *Miranda* warnings and that before he confessed Matchopatow signed a written waiver that clearly outlined the *Miranda* warnings. The heart of Matchopatow's argument is that Officer Delabrue's post-*Miranda* comments constituted a coercive tactic that essentially "undid" the earlier *Miranda* admonishment about the permissible use of his statements and thus rendered his waiver involuntary. Ground one of Matchopatow's motion to suppress arguably could encompass this claim. Unfortunately, Matchopatow failed to elaborate on that argument in his motion. Instead, he focused primarily on his alleged request for counsel; indeed, the only mention of *Miranda* in the pretrial motion refers to the fact that a suspect "who invokes his right to counsel under *Miranda* [is not] subject to further interrogation." Moreover, in the district court Matchopatow asserted only that Dela-

---

1. Under that section, a defendant may, with the approval of the court and the consent of the government, "enter a conditional plea of guilty ... reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion." Fed.R.Crim.P. 11(a)(2).

brue's tactics rendered his *confession* (and not his *Miranda* waiver) involuntary. Applying *Doherty,* which requires that the conditional guilty plea explicitly state the grounds preserved for appeal, we conclude that Matchopatow failed to adequately raise the voluntariness of his *Miranda* waiver as an issue below and thus failed to preserve the issue for appeal.

█ Regardless, even if Matchopatow had preserved his *Miranda* argument, the claim would still fail because he was not "in custody" when he was interrogated. We review the question whether Matchopatow was "in custody" for *Miranda* purposes de novo, giving deferential review to the trial court's findings of historical fact and its credibility determinations. *Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995); *United States v. Madoch,* 149 F.3d 596, 600 (7th Cir.1998).

█ It is well established that the duty to give *Miranda* warnings arises only during custodial interrogation. *See Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). The Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thus, a person must be both in custody and interrogated in order to trigger the need for *Miranda* warnings. *See Illinois v. Perkins,* 496 U.S. 292, 297, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990). An individual is considered "in custody" when his freedom of movement is restrained to the degree comparable to a formal arrest; an individual is not in custody if a reasonable person would have believed he was free to leave. *United States v. Salyers,* 160 F.3d 1152, 1159 (7th Cir. 1998). The test is an objective one. *Id.*

█ Several factors guide the determination whether a suspect was "in custody" at the time of questioning: whether (1) the encounter occurred in a public place; (2) the suspect consented to speak with the officers; (3) the officers informed the suspect that he was not under arrest and was free to leave; (4) the suspect was moved to another area; (5) there was a threatening presence of several officers and a display of weapons or physical force; (6) the officers deprived the suspect of documents he needed to continue on his way; and (7) the officer's tone of voice was such that his requests would likely be obeyed. *See United States v. Wyatt,* 179 F.3d 532, 535 (7th Cir.1999); *see also United States v. Scheets,.* 188 F.3d 829, 836–37 (7th Cir. 1999). Moreover, just because a suspect is questioned in a "coercive environment" by law enforcement officers does not necessarily mean that he is "in custody" for *Miranda* purposes. *Wyatt,* 179 F.3d at 535. Rather, the defendant must show that he was "subjected to restraints of freedom such that the conditions of a formal arrest were closely approximated or actually attained" and that a reasonable person in the defendant's position would not have felt free to leave. *Id.* at 536 (citation omitted).

█ Matchopatow's interrogation occurred in a police station, which arguably could be though of as a coercive environment, but there is no evidence that Matchopatow's freedom was restrained to the extent that he would not have felt free to leave the tribal police station. Matchopatow consented to speak with Delabrue, and accompanied Delabrue, unrestrained, to the police station. *See United States v. Jones,* 21 F.3d 165, 170 (7th Cir.1994). Matchopatow was never told he could not leave, nor was he ever told that he was under arrest. He was left unsupervised for a period of time at the station, and

Delabrue (the only officer present during the interview) never displayed weapons or force. *Id.* And though Matchopatow was given *Miranda* warnings and never affirmatively told he could leave, these factors on balance weigh against a finding of custody. *See, e.g., Mathiason,* 429 U.S. at 494–95, 97 S.Ct. 711; *Sprosty v. Buchler,* 79 F.3d 635, 642 (7th Cir.1996) (mere fact that suspect received *Miranda* warnings does not establish custody); *United States v. Fazio,* 914 F.2d 950, 956 (7th Cir.1990). It follows that, because Delabrue was not obligated to issue *Miranda* warnings under the circumstances, Matchopatow's *Miranda* argument fails.

 In any event, Matchopatow's voluntariness claim is without record support. It is clear from Matchopatow's own testimony at the suppression hearing, that both he and Delabrue understood the detective's promise of confidentiality to extend only to keeping the story out of the newspapers. Matchopatow testified at the suppression hearing that he "understood [his] *Miranda* rights when they were given" and "knew at that time that [he] could have refused to speak to [Delabrue] if [he] chose to." He acknowledged that the reason he confessed was because "he was afraid of being embarrassed" and "what [he meant] by being embarrassed is going public with it" in the newspapers. Matchopatow knew that whatever he told Delabrue "would go up the chain of command, and it would be where the chief would find out, the tribal prosecutor, the tribal judge, or the federal prosecutors, if need be, that would handle the case would find out about it." He also knew from prior experience that he would be prosecuted for this crime. Matchopatow understood Delabrue's comment to mean that if he told the truth, Delabrue would not leak the information to the newspapers, which in this case was the truth. Delabrue made no false promises and engaged in no deceit. In light of this testimony, Matchopatow now cannot credibly argue that he was misled by Delabrue's statements and that his earlier *Miranda* waiver was invalid.

AFFIRMED.

