# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2861

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RIAKOS BARKER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 03 CR 12—**Theresa L. Springmann**, *Judge.*

ARGUED SEPTEMBER 25, 2006—DECIDED OCTOBER 30, 2006

Before BAUER, KANNE, and WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* A jury convicted Riakos Barker of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and two counts of aiding and abetting a straw purchase in violation of 18 U.S.C. § 924(a)(1-2). Barker was sentenced to 108 months of imprisonment. On appeal, Barker argues that (1) the district court erred in denying his motion to suppress; (2) the government violated *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), by failing to provide a witness statement until the first day of trial; and (3) his due process rights were violated by the enhancement of his sentence. We affirm.

## I.  Background

On March 12, 2001, Nykisha Lovelace purchased two firearms for Riakos Barker ("Barker") from K's Merchandise in Fort Wayne, Indiana. Barker's sister, Korendi Barker ("Korendi"), had given Lovelace her gun permit to make purchases. A Bureau of Alcohol, Tobacco, and Firearms ("ATF") investigation later uncovered that of eight guns that had been purchased by women between March 8 and March 16 in Fort Wayne, five were used in crimes in Detroit, Michigan, including the guns purchased by Lovelace.

During the ATF's investigation of the weapons purchases, Special Agent Sean Skender obtained statements from Korendi and Lovelace, implicating Barker. Agent Skender then sought out Barker, leaving business cards with his contact information at several locations. When Barker and Agent Skender eventually made contact, Agent Skender informed Barker that he wanted to discuss gun purchases. They arranged to meet at the ATF field office in Fort Wayne on February 26, 2003.

When Barker arrived for the meeting, he was buzzed through the front door and led to a nearby conference room. Barker sat at the end of a conference table near the closed but unlocked door. Barker was not physically restrained and no guns were brandished. Special Agents Skender and John Phinney identified themselves by badge and credentials. Agent Skender advised Barker that he was not under arrest, was free to go at any time, and did not have to answer any questions. Barker was not informed that he had a right to an attorney. During the interview, Barker's answers were responsive, and he never asked to leave or declined to answer any questions.

Based on statements from Korendi and Lovelace, Agent Skender believed that Barker was not telling the truth. Agent Skender then told Barker that "gun stores video-taped" and glanced at two videotapes sitting on the confer-

ence room table, even though there was no videotape of the gun transactions for which Barker was eventually charged. Agent Skender also said that it would be a shame for his sister to testify against him with his mother watching. Barker responded that he wanted to tell the truth and confessed his involvement in the gun purchases. At the end of the interview, Barker was escorted to one of the outer doors and left the ATF office.

On March 26, 2003, Barker was indicted with five counts of aiding and abetting another who knowingly made a false statement and representation in violation of 18 U.S.C. § 924(a)(1-2) and a single count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On January 8, 2004, Barker filed a motion to suppress his statements, contending that he was subject to a custodial interrogation without being informed his *Miranda* rights. The district court denied this motion, holding that based on the totality of the circumstances Barker was not in custody.

After several appointed attorneys withdrew, Robert W. Gevers, II was appointed to represent Barker. Gevers was the former Allen County Prosecuting Attorney, whose office previously prosecuted Barker. In multiple *pro se* filings made shortly after trial, Barker questioned whether his trial counsel had represented him loyally and zealously. Initially, Barker raised this issue on appeal but withdrew it during oral argument, reserving it for a *habeas corpus* petition.

On May 21, 2004, the government received an affidavit from Korendi in which she recanted any incriminating statements she had made against Barker. The same day, the government dismissed three of the six counts that were based on Korendi's testimony.

The case proceeded to trial. After testimony from an ATF

inspector and Lovelace, the government called Agent Skender to the stand. During the cross examination of Agent Skender, he testified that he had located the K's Merchandise clerk, Amanda Diers who had sold the guns to Lovelace and prepared a report summarizing her statements. This report had not been disclosed previously to defense counsel. The district court reviewed the report *in camera* and then ordered that a copy of the report be provided to the defense. In the report, Diers stated that she recalled that the purchaser was buying guns for her boyfriend, not Barker. After Gevers reviewed the report, he moved for a mistrial. The district court recessed early for the day giving Gevers the opportunity to interview Diers and took the motion for mistrial under advisement. The next day, Gevers indicated that he had spoken to Diers and was withdrawing his motion for mistrial. Diers testified at trial consistent with Agent Skender's report. She also testified that during the transaction, there were two females, one male, and one child present and that the male, whom she did not recognize as Barker, was "just there."

The jury found Barker guilty of the three remaining counts. At sentencing, Barker argued for a downward departure from the sentencing guidelines based on family obligations, in particular the health and medical needs of his daughter. The district court rejected this request. Instead, the district court enhanced his sentence based on testimony from Agent Skender, Lovelace, and Korendi that established that there were eight total guns involved in the scheme. Specifically, Agent Skender testified that Barker admitted to purchasing, or having Korendi purchase firearms. Agent Skender also testified that eight firearm transaction records, known as Forms 4473's, named Korendi as the purchaser. Lovelace testified that she had made two purchases for Barker, and Korendi initially had admitted to ATF agents that she had made the other six purchases. While Korendi later recanted this statement in

an affidavit, the district court did not find Korendi's affidavit credible.

The district court also enhanced Barker's sentence on the grounds that he had obstructed justice and had been an "organizer or leader" of the criminal activity. The obstruction of justice enhancement was based on a recorded jail call between Barker and Kenosha Haney and testimony from Korendi at the sentencing hearing. In the call, Barker asked Haney if Korendi was there and then gave Korendi specific instructions as to what her affidavit was to include, how it was to be executed, and how it was to be signed and filed. Barker was sentenced to 60 months of imprisonment on Counts 1 and 2 and 108 months of imprisonment on Count 3, all to run concurrently. Barker timely appealed.

## II. Discussion

### A. Motion to Suppress

Barker asserts that the district court erred by denying his motion to suppress. He claims that his Fifth Amendment right against self-incrimination was violated when he was subjected to a custodial interrogation without being advised of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). A suspect interrogated by law enforcement officers while in custody must be notified of his constitutional rights to counsel and against self-incrimination. *Id.* at 444. However, "*Miranda* warnings are not required merely because the individual questioned by law enforcement officers is a suspect or is the focus of a criminal investigation." *United States v. Jones*, 21 F.3d 165, 170 (7th Cir. 1994). The "suspect must be both 'in custody' and subjected to 'interrogation' before the *Miranda* warning are required to be administered." *United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002).

A custodial interrogation occurs when there is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444. "This inquiry is determined from the view of 'how a reasonable man in the suspect's position would have understood his situation.'" *Jones*, 21 F.3d at 170 (*quoting Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)). "A totality of the circumstances test is used to determine whether a reasonable person would have believed he or she was free to leave." *United States v. Lennick*, 917 F.2d 974, 977 (7th Cir. 1990). In considering the totality of the circumstances, factors include

> (1) whether the encounter occurred in a public place; (2) whether the suspect consented to speak with the officers; (3) whether the officers informed the individual that he was not under arrest and was free to leave; (4) whether the individuals were moved to another area; (5) whether there was a threatening presence of several officers and a display of weapons or physical force; (6) whether the officers deprived the defendant of documents she needed to continue on her way; and (7) whether the officers' tone of voice was such that their requests would likely be obeyed.

*United States v. Wyatt*, 179 F.3d 532, 535 (7th Cir. 1999).

The district court correctly determined that based on the totality of the circumstances Barker was not in custody and, as such, the agents were not required to inform him of his *Miranda* rights. Barker voluntarily came to the ATF office, was informed that he was not under arrest and consented to speak with the officers. He was not deprived of his freedom, and there was no threatening presence of officers. Additionally, Agent Skender's false implication that he had a videotape of Barker did not

render the interrogation custodial. *See Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977) (finding that officer's false statement that defendant's fingerprints were found at the crime scene had "nothing to do with whether respondent was in custody for purposes of *Miranda* rule"). Accordingly, although Barker was a suspect, *Miranda* warnings were not required because Barker was not in custody.

### B. Exculpatory Material

Barker next claims that his right to a fair trial was prejudiced because the government failed to timely disclose Agent Skender's report containing exculpatory information. Barker also asserts that he was further prejudiced by his inability to impeach Diers with the statement. In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. However, "evidence for *Brady* purposes is deemed 'suppressed' if (1) the prosecution failed to disclose the evidence before it was too late for the defendant to make use of the evidence, and (2) the evidence was not otherwise available to the defendant through the exercise of reasonable diligence." *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002). We review claims under *Brady* raised for the first time on appeal for plain error. *United States v. Stott*, 245 F.3d 890, 900 (7th Cir. 2001). We find that there was no plain error.

Though discovered at trial, the defense had sufficient time to make use of Agent Skender's report. Gevers had time to find Diers, interview her, and call her as a witness. In fact, Gevers used both the report and Diers' testimony in support of his defense. Gevers even recalled Agent Skender as a witness to question him on his failure to disclose the

report. Therefore, the government's failure to disclose Agent Skender's report earlier did not rise to the level of a *Brady* violation because it was not too late for the defense to make use of the evidence.

## C. Sentencing

Finally, Barker asserts that the district court erred by enhancing his sentence based on unreliable evidence in violation of his right to due process. All that due process requires is that a defendant "be sentenced on the basis of reliable information." *United States v. Smith*, 3 F.3d 1088, 1100 (7th Cir. 1993) (*quoting United States v. Campbell*, 985 F.2d 341, 348 (7th Cir. 1993)). To successfully challenge his sentence, Barker must demonstrate that the information was inaccurate and that the court relied on it. *United States v. Amaya*, 32 F.3d 308, 314 (7th Cir. 1994). The district court enhanced Barker's sentence based on its finding that there were eight firearms involved in the scheme. We find that there was no clear error of the factual findings of the district court.

The ATF agents testimony was corroborated by Lovelace's trial testimony and Korendi's grand jury testimony. Although Korendi recanted her statement, the district court found that her affidavit was not credible. We will not disturb the district court's credibility findings.

The district court also enhanced Barker's sentence for obstruction of justice. The finding was contrary to Korendi's testimony at the sentencing hearing, that she was not pressured by Barker to sign the affidavit. Instead, the district court credited testimony from the motion to suppress hearing, Korendi's sentencing agreement, and grand jury testimony, along with the recorded jail call. We find that the district court properly relied on this evidence to enhance Barker's sentence as Barker failed to show that such evidence was unreliable.

## III.  Conclusion

Accordingly, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—10-30-06