In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-3953

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DENNIS THOMPSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 CR 847—**Joan Humphrey Lefkow**, *Judge.*

ARGUED MAY 25, 2007—DECIDED AUGUST 7, 2007

Before BAUER, CUDAHY, and FLAUM, *Circuit Judges.*

BAUER, *Circuit Judge.* On October 20, 1999, Dennis Thompson robbed a branch of the LaSalle National Bank in Peru, Illinois, taking $64,761 in cash. Nearly five years later, on September 22, 2004, FBI Special Agents Timothy Eley and Dan Lee arrived at Thompson's home to interview him about the robbery. Ultimately, Thompson confessed twice to robbing the LaSalle National Bank: first to Agents Eley and Lee at his home, and later to Agents Randy Ray and Mike Dalide at the FBI's Rockford, Illinois office.

On October 14, 2004, Thompson was charged in an indictment with aggravated bank robbery (count one), in

violation of 18 U.S.C. §§ 2113(a) and (d), and use of a firearm in furtherance of a crime of violence (count two), in violation of 18 U.S.C. § 924(c)(1)(A). He filed a motion to suppress the September 22 and 23, 2004 statements that he gave to the FBI agents. The district court held an evidentiary hearing on Thompson's motion on March 2, 2006 and issued an opinion denying the motion on March 21, 2006. Thompson entered a conditional plea of guilty to both counts in the indictment, reserving the right to appeal the denial of his motion to suppress. On October 20, 2006, the district court sentenced Thompson to a total of 148 months' imprisonment. Thompson filed a timely notice of appeal on October 26, 2006.

Thompson's appeal challenges the district court's denial of his motion to suppress on two grounds: (1) the first interrogation was custodial and he was not given proper warnings under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); and (2) the agents deliberately subjected him to a two-step interrogation in order to evade *Miranda*, in violation of *Missouri v. Seibert*, 542 U.S. 600, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004). When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and questions of law *de novo*. *United States v. Parker*, 469 F.3d 1074, 1077 (7th Cir. 2006) (*citing United States v. Grap*, 403 F.3d 439, 443 (7th Cir. 2005)). Because the resolution of a motion to suppress is a fact-specific inquiry, we give deference to credibility determinations of the district court judge, who had the opportunity to listen to testimony and observe the witnesses at the suppression hearing. *Id.* (*citing United States v. Marshall*, 157 F.3d 477, 481 (7th Cir. 1998)).

The district court judge credited the testimony of Agents Eley and Lee regarding their encounter with Thompson on September 22, 2004. They testified that they had arrived at Thompson's home on that date to interview Thompson

about the robbery of the LaSalle National Bank. The agents identified themselves to Thompson, showed their photo identification to him, and asked him if he was willing to speak with them. Thompson agreed, inviting the agents into his living room. Once inside and while everyone remained standing, the agents questioned Thompson about his background. Thompson answered the agents' questions but gave the agents his alias, David James Fowler, and an alias birth date. He denied that he was involved in the bank robbery until the agents showed him a sketch of the robbery suspect and called him by his given name, Dennis. Thompson testified at the suppression hearing that, at that point, he realized that the agents knew his identity.

The agents questioned Thompson from that point forward while sitting in the living room. Thompson testified that he sat on the couch while the agents sat in chairs to the left and right of him, approximately four or five feet away. Even when they leaned forward, at no point did the agents come within two feet of his face. Neither agent physically touched Thompson in a threatening or intimidating manner. During the interview, Thompson asked to get a glass of water from the kitchen and, later, his Bible from a walk-in closet in the living room. Agent Eley agreed to Thompson's requests but followed him on both occasions at a distance of about five to six feet, keeping Thompson in view at all times.

Over the next few hours, the agents told Thompson that criminal defendants who cooperate with the authorities receive lighter punishments. They also mentioned the possibility that Thompson might be released from jail on bond in order to dispose of his personal possessions. Eventually, Thompson confessed to the robbery in detail. Agent Eley prepared a written confession that Thompson reviewed and signed. The agents then left Thompson's

home without arresting him. Two other agents stood watch over Thompson's home approximately 100 yards away.

Early the next morning, Thompson left his home dressed in athletic clothing to go for a jog. FBI Agents Randy Ray and Mike Dalide were conducting surveillance of Thompson's building. They had received instructions to take Thompson into custody if he left his residence. When Thompson attempted to leave, the agents arrested him, eventually bringing him to the FBI's Rockford, Illinois office. Neither Agent Ray nor Agent Dalide knew that Thompson had confessed the previous night to committing the bank robbery. They placed Thompson in an interview room and advised him of his *Miranda* rights, which Thompson waived. Thompson then gave a second confession to the October 20, 1999 robbery of the LaSalle National Bank.

In his appeal, Thompson ignores certain findings of the district court and instead offers again his version of the events on September 22 and 23, 2004, which the district court rejected. The district court judge specifically declined to credit Thompson's claim that Agent Eley placed his hand on his firearm in a threatening manner before Thompson was allowed to move into the kitchen. She found that the agents did not motion to or otherwise identify their weapons at any point during the interview. The judge also rejected Thompson's claim that he had confessed to Agents Eley and Lee in exchange for promises that Thompson could spend the night in his home and that he would not be arrested until the following afternoon or evening. She found further that the agents did not instruct Thompson to remain in his home and that Thompson was not aware that agents were posted outside his home during the late evening hours of September 22, 2004 and the early morning hours of September 23, 2004. Thompson does not argue that these findings were clearly erroneous or otherwise challenge the district court's

findings of fact. In light of the district court's careful consideration of the conflicting testimony and the deference that we give to its factual determinations, we accept the district court's findings of fact for our *de novo* consideration of whether Thompson's first interrogation was custodial and whether the two interrogations violated *Miranda.*

We turn now to Thompson's contention that the interrogation conducted by Agents Eley and Lee at his home was custodial and therefore in violation of *Miranda.* Under *Miranda*, a suspect interrogated by law enforcement officers while in custody must be notified of his constitutional rights to counsel and against self-incrimination. *Miranda*, 384 U.S. at 444. Before *Miranda* warnings are required, however, "the suspect must be both 'in custody' and subjected to 'interrogation. . . .'" *United States v. Barker*, 467 F.3d 625, 628 (7th Cir. 2006) (*citing United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002)).

A suspect is "in custody" for *Miranda* purposes when there is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Barker*, 467 F.3d at 628 (*quoting Miranda*, 384 U.S. at 444). "Custody 'implies a situation in which the suspect knows he is speaking with a government agent and does not feel free to end the conversation; the essential element of a custodial interrogation is coercion.'" *United States v. Salyers*, 160 F.3d 1152, 1159 (7th Cir. 1998) (*quoting United States v. Martin*, 63 F.3d 1422, 1429 (7th Cir. 1995)).

The inquiry into whether a suspect is in custody is objective: we look to the totality of the circumstances and consider whether a reasonable person would have believed that he or she was free to leave. *Barker*, 467 F.3d at 628 (*citing United States v. Lennick*, 917 F.2d 974, 977

(7th Cir. 1990)). We consider such factors as whether the encounter occurred in a public place; whether the suspect consented to speak with the officers; whether the officers informed the individual that he was not under arrest and was free to leave; whether the individual was moved to another area; whether there was a threatening presence of several officers and a display of weapons or physical force; and whether the officers' tone of voice was such that their requests were likely to be obeyed. *Id.* at 629.

Considering the totality of the circumstances present here, a reasonable person would not have believed that he was in custody. Thompson invited the agents into his home and agreed to be questioned. *See Beckwith v. United States*, 425 U.S. 341, 347-48, 96 S. Ct. 1612, 48 L. Ed. 2d 1 (1976) (relaxed, three-hour interview in suspect's home did not implicate *Miranda*). While Thompson's living room is small, requiring Thompson and the agents to sit within a few feet of one another, the close proximity of the agents alone, in these circumstances, is insufficient to render a suspect "in custody."

Additionally, the agents did not raise their voices or display their weapons in an intimidating manner, nor did they physically restrain Thompson in any way. *See United States v. Griffin*, 922 F.2d 1343, 1350-51 (7th Cir. 1990) ("The bare fact of physical restraint does not itself invoke *Miranda*, only that restraint which is of a degree associated with formal arrest.") (internal citations and quotations omitted). Agent Eley followed Thompson when Thompson went to get a glass of water and his Bible, activities that are not inherently private and that do not establish a custodial situation by the mere presence of a law enforcement officer. *Cf. United States v. Madoch*, 149 F.3d 596, 601 (7th Cir. 1998) (presence of agent in bathroom while getting dressed and pumping breast milk sufficient to establish that suspect was "in custody"). There

is also no evidence of coercion or subterfuge. The district court did not believe Thompson's claim that the agents had promised Thompson anything in exchange for his confession, and the agents testified that the interview was calm and that they did not raise their voices when speaking with Thompson. Thompson was not arrested at the conclusion of the interview, and his own actions the following morning of leaving his home dressed in athletic apparel to go jogging suggest that Thompson himself did not believe that he was in custody. Thus, we are in agreement with the district court's finding that Thompson was not "in custody" during the September 22 interview and denial of Thompson's motion to suppress the September 22 confession.

In light of our finding that Thompson was not "in custody" during the first interview, his second challenge, the contention that his September 23, 2004 confession was the result of an impermissible, two-step interrogation process designed to circumvent and undermine *Miranda*, also fails. In *Missouri v. Seibert*, 542 U.S. 600, 124 S. Ct. 2601, 159 L. Ed. 2d 643 (2004), on which Thompson relies, the Supreme Court invalidated the "question first" police protocol for custodial interrogation in which the police first question a suspect who is in custody until the suspect gives a confession without giving the suspect *Miranda* warnings. 542 U.S. at 604-05. Only after the suspect confesses would the police give the *Miranda* warnings and then repeat the questions until the suspect gives the incriminating answers that he or she had provided earlier. 542 U.S. at 606. In this case, *Miranda* warnings before the first confession were not required because Thompson's first interview was not custodial; *Seibert* therefore does not apply. Accordingly, the district court properly denied Thompson's motion to suppress his September 23, 2004 statement.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*