In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-2343

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STEVEN SNODGRASS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:09-cr-30039-JPG-1—**J. Phil Gilbert,** *Judge.*

ARGUED NOVEMBER 29, 2010—DECIDED FEBRUARY 18, 2011

Before BAUER, WOOD and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* A jury convicted Steven Snodgrass on one count of knowingly attempting to receive child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) and two counts of possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). The advisory United States Sentencing Guideline range for the first count was 235 to 240 months' imprisonment (with a statutory cap of 20 years), and the Guideline

range for the remaining two counts was 120 months' imprisonment (with a statutory cap of 10 years). The district court judge sentenced Snodgrass to 360 months in prison, ten years above the Guideline range. Snodgrass appealed. For the following reasons, we affirm.

## I. BACKGROUND

In November 2007, postal inspectors contacted Snodgrass via e-mail and offered to sell him pornographic videos of Daphne (aged 10), Oxana (aged 12), and Nadia (aged 14). In September 2008, Snodgrass replied to the e-mail and ordered three videos of Daphne. The descriptions of these three films were drafted in such a way that Snodgrass could not mistake the videos' particularly heinous content; suffice it to say that each description portrayed Daphne, a ten-year-old, in explicit sex acts, including masturbation, oral sex, and incestual rape.

In October 2008, postal inspectors organized a controlled delivery of the three films. Approximately five minutes after Snodgrass received the videos, postal inspectors entered Snodgrass' apartment and executed a search warrant. Given the small size of the apartment, two inspectors took Snodgrass to a public laundry room located inside the apartment complex. They informed Snodgrass of his Miranda rights, told him that he was not under arrest, and explained that if Snodgrass wanted to speak with them, he would need to do so voluntarily. Snodgrass then waived his Miranda rights and admitted the following: he ordered three videos of Daphne; he purchased the money order that was used

to buy the three videos of Daphne; he knew that Daphne was only ten years old; he knew that the videos contained child pornography and were illegal; and he had planned to delete the images of child pornography from his computer before ordering the videos of Daphne, but he changed his mind and kept these images on his computer. Snodgrass filed a motion to suppress each of these statements, but the district court denied the motion in its entirety.

At trial, Donald Bauer testified that Snodgrass once lived in a home owned by David Carlin and that Carlin had access to at least one of Snodgrass' computers. However, the district court judge prohibited Bauer from testifying that (1) Carlin and Snodgrass' relationship deteriorated to the point where Carlin and Snodgrass filed civil lawsuits against each another, and (2) Carlin cut off Snodgrass' power, caused a septic tank to back-flow into Snodgrass' house, and ripped out Snodgrass' propane line. The district court judge excluded this testimony because it was hearsay, irrelevant, and speculative.

The jury returned a verdict of guilty on each count, and the district court judge sentenced Snodgrass to 360 months in prison, a sentence which is ten years above the Guideline range. Under this sentence, Snodgrass will be nearly 85 years old when he is released. Although the judge offered very little explanation for this sentence during the sentencing hearing, he filed a sentencing memorandum that—through its analysis of the sentencing factors set forth in 18 U.S.C. § 3553(a)—explained the defendant's sentence in much more detail.

## II. DISCUSSION

The defendant makes three arguments on appeal: (1) the district court should have granted Snodgrass' motion to suppress; (2) the district court should have permitted Bauer to testify about Carlin and Snodgrass' hostile relationship; and (3) Snodgrass' sentence is unreasonable.

### A. Snodgrass' Motion to Suppress

Snodgrass filed a motion to suppress the statements he made to postal inspectors in the laundry room. The district court denied this motion because Snodgrass was not in custody during the interview and, even if he was, Snodgrass voluntarily waived his Miranda rights. We review the district court's conclusions of law de novo and factual findings for clear error. *See United States v. Figueroa-Espana*, 511 F.3d 696, 701 (7th Cir. 2007).

Under *Miranda v. Arizona*, an officer cannot interview a suspect who is in custody until the suspect is notified of his constitutional rights to counsel and against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). For Miranda purposes, a suspect is "in custody" when he is "deprived of his freedom of action in any significant way." *United States v. Thompson*, 496 F.3d 807, 810 (7th Cir. 2007). To determine whether a suspect was in custody, we inquire whether, under the totality of circumstances, a reasonable person in the defendant's position would have believed that he was free to leave. *See United States v. Budd*, 549 F.3d 1140, 1145 (7th Cir. 2008). We consider such factors as "whether

the encounter occurred in a public place; whether the suspect consented to speak with the officers; whether the officers informed the individual that he was not under arrest and was free to leave; whether the individual was moved to another area; whether there was a threatening presence of several officers and a display of weapons or physical force; and whether the officers' tone of voice was such that their requests were likely to be obeyed." *Thompson*, 496 F.3d at 810.

Snodgrass contends that he was "in custody" when he admitted to ordering the three pornographic films of Daphne. We disagree. The following facts are undisputed: inspectors took Snodgrass to the laundry room because Snodgrass' very small apartment was in the process of being searched by four postal inspectors; the laundry room was a public space that remained open to the public during the interview; the door to the laundry room was open at all times; nothing ever blocked Snodgrass' path to the door; officers told Snodgrass that he was not under arrest and that they would interview him only if he consented; Snodgrass signed a waiver of his Miranda rights; only two inspectors interviewed Snodgrass; although the inspectors' weapons were visible, they were holstered during the entire interview; and the inspectors never handcuffed or physically restrained Snodgrass. At no time did the inspectors raise their voices, encourage Snodgrass to speak, coerce Snodgrass into speaking, restrain Snodgrass, threaten Snodgrass, verbally or physically abuse Snodgrass, or otherwise give Snodgrass a reason to feel intimidated. Thus, although the defendant subjectively

felt intimidated, we find that a reasonable person in Snodgrass' position would have felt free to leave, and we affirm the district court's finding that Snodgrass was not in custody. *See, e.g.*, *Budd,* 549 F.3d at 1144-45; *Thompson*, 496 F.3d at 811; *United States v. Barker*, 467 F.3d 625, 629 (7th Cir. 2006); *United States v. Matchopatow*, 17 Fed. Appx. 425, 430-31 (7th Cir. 2001); *United States v. Wyatt*, 179 F.3d 532, 537 (7th Cir. 1999).[1] For the same reasons, we affirm the district court's denial of Snodgrass' motion to suppress.

Nevertheless, even if Snodgrass was in custody, Snodgrass' statements were admissible at trial because he voluntarily waived his Miranda rights. A person may waive his Miranda rights only if the waiver is done

---

[1]   Snodgrass' reliance on *United States v. Slaight* is misplaced. 620 F.3d 816 (7th Cir. 2010). In *Slaight,* police officers reserved a small police station interview room prior to executing a search warrant, took the defendant from his home to the interview room without arresting him, and questioned him without first explaining his Miranda rights. In fact, the officers planned and executed the entire day so as to procure the defendant's statements without first informing him of his Miranda rights. This case is unlike *Slaight* because (1) inspectors asked Snodgrass to go to the laundry room only because his small apartment was being searched by four postal inspectors; (2) the laundry room—which was open to the public—was merely a few steps away from his apartment; (3) although Snodgrass was never arrested, inspectors informed him of his Miranda rights and told him that any interview would need to be voluntary; and (4) Snodgrass waived his Miranda rights.

"voluntarily, knowingly and intelligently." *United States v. Carson*, 582 F.3d 827, 833 (7th Cir. 2009). When determining whether a waiver is voluntary, we look to whether, "under all the circumstances, [the confession] is the 'product of a rational intellect and free will and not the result of physical abuse, psychological abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'" *Id.* at 833 (quoting *United States v. Dillon*, 150 F.3d 754, 757 (7th Cir. 1998)). Coercion is an essential element, and we determine whether police coerced a suspect by examining the facts of the case, including "the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention, the nature of the interrogations; the inclusion of advice about constitutional rights; and the use of physical punishment, including deprivation of food or sleep.'" *Id.* (quoting *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001)).

Snodgrass argues that his waiver was involuntary and that his statements to postal inspectors were thus inadmissible. We disagree. Snodgrass was 58 years old at the time of the interview, he possessed a high school diploma, and he worked for Wal-Mart and a trucking company. During the interview itself, there was no indication that Snodgrass was mentally impaired or under the influence of drugs or alcohol. Postal inspectors informed Snodgrass that he was not under arrest and that if he would like to speak to them, he would need to do so voluntarily. After acknowledging that he was "very familiar" with his Miranda rights, Snodgrass thoughtfully deliberated about whether he wanted to waive

them. And when Snodgrass finally decided to waive his Miranda rights, his decision was not a result of mental or physical harm. Although Snodgrass felt intimidated by the postal inspectors, graduated at the bottom of his high school class, and suffered from various health problems, these facts do not indicate that postal inspectors *coerced* Snodgrass into waiving his Miranda rights. Without coercion, we cannot find that Snodgrass' waiver was involuntary. We therefore affirm the district court's ruling that Snodgrass voluntarily waived his Miranda rights and the district court's denial of Snodgrass' motion to suppress.

### B.  Bauer's Testimony

Snodgrass contends that the district court should have permitted Bauer to testify about Carlin's hostile relationship with Snodgrass. We review the district court's decision to exclude this testimony for abuse of discretion. *United States v. Price*, 516 F.3d 597, 603 (7th Cir. 2008).

During an offer of proof, Bauer testified that although he did not personally know why Carlin and Snodgrass' relationship deteriorated, he had heard that Carlin cut off Snodgrass' power, caused a septic tank to backflow into Snodgrass' residence, and ripped out Snodgrass' propane line. The district court judge ruled that Bauer could not testify about these events or the breakdown of Snodgrass and Carlin's relationship because it was "based upon hearsay and speculation and not of personal knowledge." Report of Proceedings of Trial Testimony at 189*, United States v. Snodgrass*, (No. 09-30039).

Snodgrass argues that this ruling was improper be-
cause the judge improperly excluded testimony on an
entire subject area instead of ruling on every question
when it was asked. We reject this argument. First, there
is no rule which imposes upon a judge the tedious task
of ruling on every question after it is asked, as opposed
to prohibiting testimony about a particular hearsay
matter ex ante. Second, Snodgrass mischaracterized the
district court's ruling. The judge did not prohibit every
conceivable witness from testifying about Carlin and
Snodgrass' relationship, thereby excluding an entire
subject area; he merely excluded Bauer's hearsay testi-
mony and ruled that Bauer could not testify about facts
not within his personal knowledge. This ruling is consis-
tent with the Federal Rules of Evidence. *See* Fed R. Evid.
802; Fed. R. Evid. 602; *Russell v. Acme-Evans Co.*, 51 F.3d
64, 68 (7th Cir. 1995). We therefore affirm the district
court, finding no abuse of discretion.

### C. Snodgrass' Sentence

Snodgrass contends that his sentence is unreasonable
because the district court inadequately explained his
sentence. We review the reasonableness of Snodgrass'
sentence for abuse of discretion. *United States v. Jackson*,
547 F.3d 786, 792 (7th Cir. 2008).

At the time of sentencing, a judge must "state in
open court the reasons for its imposition of the par-
ticular sentence." 18 U.S.C. § 3553(c); *Rita v. United States*,
551 U.S. 338, 356 (2007). The brevity or length of the
judge's explanation depends on the circumstances of the

case, but "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 551 U.S. at 356. Generally, a significant departure from the Guidelines will require more explanation than a small departure. *Gall v. United States*, 552 U.S. 38, 50 (2007) (stating that the explanation should be "sufficiently compelling to support the degree of the variance").

In this case, the district court judge sentenced Snodgrass to 360 months in prison, a sentence which was ten years above the advisory Guideline range. At the sentencing hearing, the judge explained the upward variance by stating,

> Mr. Snodgrass, there's not a whole lot I'm going to say. I listened to the trial, have seen the evidence at the sentencing hearing. You are definitely a scourge on society. You are a sick-o. You're a sexually dangerous person who, in the opinion of this Court, should never be allowed the freedom to abuse children again. You may be beyond redemption, but that's not for me to decide. There's good and evil in this world, and you fit the bill of being evil.
>
> There's not a [§] 3553(a) factor that doesn't cry out for a sentence that will result in your incarceration the better part of the rest of your life.

Transcript of Sentencing Hearing at 28-29. Subsequently, the judge filed a written document that explained Snodgrass' sentence through a fact-intensive analysis of the § 3553(a) sentencing factors. This document high-

lighted the following facts as particularly significant: Snodgrass was an incestual rapist who abused his sister, niece, and great-nieces; Snodgrass possessed over 7,000 pornographic images of children, a number which is ten times larger than the amount required to receive a maximum enhancement under the Guidelines; Snodgrass regularly abused four individuals—including his sister, who he began raping when they were still children—while the Guidelines authorize a maximum enhancement when the defendant engages in only *two incidents* of sexual abuse; Snodgrass engaged in a lifelong pattern of abusive behavior against minors, leaving a trail of sexual abuse victims across the United States; Snodgrass made videos of female children which focused primarily on their breasts and genitals; and despite the overwhelming evidence of sexual abuse and the alarming number of victims who testified at the sentencing hearing, Snodgrass continues to deny his behavior. Given these facts and the district court's well-reasoned written analysis of the § 3553(a) factors, we cannot say that the court abused its discretion in sentencing Snodgrass to 360 months in prison, and we affirm this sentence as reasonable.

We caution, however, that name-calling is not a substitute for reasoned analysis. Regardless of the heinous nature of the crime, every defendant is entitled to a reasoned explanation of his sentence. This ensures meaningful appellate review and promotes the perception of fair sentencing. During Snodgrass' sentencing hearing, the judge uttered an explanation that provided no guidance on appeal and served only to insult the defendant.

Such an explanation is inadequate under the law and incompatible with of our system of justice. While the judge's written explanation of Snodgrass' sentence preserved meaningful appellate review, we lament the need for it in this case.

## III.  CONCLUSION

The district court properly denied Snodgrass' motion to suppress, excluded Bauer's hearsay testimony, and imposed a reasonable sentence. We therefore AFFIRM the judgment of the district court.